STATE ex rel. PAYNE, Plaintiff, v. REEVES, State Auditor, Defendant, (Polley et al., Intervenors.)

(In Five Parts.)

(184 N. W. 993.)

(File No. 4975.   Opinion filed October 27, 1921.)

PART I.

1. **Constitutional Law—Supreme Court—Judges, Whether Required to Reside at Capital, Official Duties, Whether Performable There—Constitutional Requirements.**

    The Constitution of this State does not require judges of the Supreme Court to reside at the state capital; and except "that at least two terms of the Supreme Court shall be held each year at the seat of government" (Const., Art. 5, Sec. 4), it does not require them to perform any official duties at the capital.

2. **Same—Fees and Salaries—Supreme Court Judges, Expense of Removal to Capital, Increased Living Expenses There, Travel Expenses, Appropriation of Fixed Sum For, Whether Living Expenses or Increased Salary—Constitutionality of Legislation**

    Under Const., Art. 21, Sec. 2, fixing annual salary of Supreme Court judges at $3000 per annum, and providing that they "shall receive no fees or perquisites whatever for the perform-

ance of any duties connected with their offices," and that it
"shall not be competent for the Legislature to increase the
salaries of the officers named in this article except as herein
provided;" and Art. 5, Sec. 30, providing that they and circuit
and county court judges shall each receive "such salary as may
be provided by law, consistent with this Constitution, and no such
judge shall receive any compensation, perquisite or emoluments
for or on account of his office in any form whatever, except
such salary;" and Sec. 5131, Code 1919, as amended by Laws
1921, Chap. 400, providing that "Whenever a judge of the
Supreme Court whose legal residence shall be at some place
other than the state capital shall have changed his place of
actual residence to the capital, there shall be paid to such
judge, in consideration of expenses incident to removal to the
capital, the increased expenses of living at a place other than
his legal residence, and the expenses of traveling to and from
such legal residence, the fixed sum of one hundred and fifty
dollars for each month, payable upon the certified voucher of
such judge filed in the office of the State Auditor;" and Laws
1921, Chap. 21, Sec. 25, (general appropriation act) appro-
priating $18,000 for biennial period beginning July 1, 1921,
and ending June 30, 1923, for payment of expenses of judges
of Supreme Court "Provided by Law;" held, (following the rule
laid down in McCoy v. Handlin, 35 S. D. 487), that said Chap.
400 violates no provision of the Constitution, and does not
operate to increase the salaries of said judges.

3. Constitutional Law—Constitution a Limitation of Power—Legis-
   lative Power Unlimited Except Where Prohibited by Consti-
   tution—Rule.

   It is a fundamental rule that the state Constitution is a lim-
   itation of power restrictive in its nature, that Legislature has
   every power save that delegated to federal · government, and
   that restricted or limited by state Constitution; generally ac-
   cepted doctrine being that Legislature may pass any acts not ex-
   pressly or by necessary implication inhibited by state or fed-
   eral Constitution.

4. Same—State Constitutional Restrictions on Legislative Power—
   Expenses for State Officers, Whether Constitution Restricts.

   The state Constitution contains no restrictions upon Legisla-
   tive power to make allowances for expenses of constitutional
   state officers who are intervenors herein.

5. Constitutional Law—Intent of Framers, as Fundamental Pur-
   pose in Constitutional Interpretation—Presumption of Care-
   ful Drafting, Less Latitude Indulged in—Act Opposing Spirit
   of Constitution, Whether Void.

   In construing a constitutional provision, fundamental pur-

pose is to ascertain and give effect to intent of its framers and of people adopting it; the object sought should be kept in mind, also evils, if any, sought to be remedied. Constitutional provisions presumed more carefully framed than statutes; hence less latitude should be indulged by courts in their construction; while yet courts may not declare an act void because deemed opposed to spirit of Constitution.

6. **Same—Legislative Act, Conflict With Constitution, Must Be Palpable Beyond Reasonable Doubt If Declared Unconstitutional—Rule.**

A legislative act should not be declared unconstitutional unless conflict between it and a principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its validity; it will not be so declared unless its unconstitutionality appears beyond reasonable doubt. This Court can not conclude beyond a reasonable doubt that Chap. 400, Laws 1921, violates any provision of Constitution.

7. **Same—Construction Which Avoids Unconstitutionality—Two Constructions, That Which Favors Validity, Preferred.**

When reasonably possible, a statute must be so construed as to uphold its validity, and so as to avoid grave doubts on the score of constitutionality; and if susceptible of two constructions, one of which renders it constitutional and the other unconstitutional, court should adopt the one which, without violating fair meaning of language, will render it valid.

8. **Same—Mere Fact of Enactment, Presumption of Constitutionality Raised By—Adjudication of Unconstitutionality, Extraordinary Power.**

A presumption favoring constitutionality is raised by mere fact of enactment of a statute by Legislature. Power of determining an act unconstitutional is extraordinary, and should only be exercised in a case free from reasonable doubt.

9. **Fees and Salaries—Expense Allowance, Whether Increasing Salary—Lump Sum Appropriation—McCoy v. Handlin Followed.**

The decision of this Court in McCoy v. Handlin, 35 S. D. 487, sustaining mandamus against the State Auditor compelling him to issue warrant on State Treasurer for the expense allowance there claimed, was right, and is sustained by practically all courts of last resort. This Court, as now constituted for decision of this proceeding might, under doctrine of stare decisis, hold that the questions involved in said decision are no longer open to controversy, but as the judges of the Supreme Court in their answer have declined to avail themselves of said doctrine, that decision will be considered same as if made by Supreme Court of another state. It is believed that decision has not been criticised by any court, while having been cited, approved

and followed by courts of highest standing in other jurisdictions.

**10.   Constitutional Law—Fees and Salaries—"Emolument," Meaning Of, As Profit From Official Employment, As Salary, Fees, Perquisites.**

The term "emolument" is defined in adjudged cases, as profit arising from office or employment; compensation for services, or that which is annexed to possession of office, as salary, fees, and perquisites; conferred as compensation, or gain, and not something necessarily and incidentally used by the officer in discharge of his duty, a duty for which he is paid a fixed salary. And an allowance for expenses actually incurred by an officer incident to performance of his official duties is neither emoluments nor perquisites.

**11.   Same—Lump Sum Appropriation for Expenses, Power of Legislature to Allow—Supreme Court Judges, Expenses Traveling and Hotel Bills, To and From Legal Residence and Capital As Actual Residence—McCoy v. Handlin, Reasoning in Adopted As Settled Law Regardless of Stare Decisis.**

The Legislature has power to allow expenses for use by a state officer, in a lump sum, provided it does not make the allowance greater than expenses it was designed to cover. So held, and following McCoy v Handlin, 35 S. D. 487, and the reasoning there employed, concerning the right of a Supreme Court judge to continue to actually reside at the place of his legal residence, but who, as in the instant case, actually resides at the seat of government while performing the duties of office, and his right to an expense allowance in lump sum in place of paying the expenses of traveling to and boarding at the capital.

**12.   Same—Larger Appropriation Than Re McCoy Case, Whether Justifying Different Decision—Legislative, Not Judicial, Question Involved—Non-presumption That Legislators Violated Oaths.**

The fact that by Chap. 400, Laws 1921, Legislature provided for an appropriation of $150. per month as expenses to each judge of the Supreme Court, whereas in the McCoy v. Handlin case the appropriation was for but $50. per month, does not justify a different decision in the instant case; since exclusive control of expenditure of public moneys is vested in legislative branch of government, and is the subject of limitation by courts only so far as provided by Constitution. And, as members of Legislature are required to take same oath as taken by judges of Supreme Court, it will not be presumed, in a doubtful case, that such members intentionally violated their oaths of office.

**13.   Same—Expense Allowance As Depending On Standard of Liv-**

ing—Judicial Notice of Increased Cost—Non-presumption That Legislature Did Not Consider Question—Non-disturbance of Legislative Determination Unless Palpably Excessive Appropriation—Presumption of Legislative Consideration of Changed Conditions.

The question whether an expense allowance of $150. per month to judges of Supreme Court is or not excessive, depends somewhat upon standard of living of those judges; with which question Legislature dealt in enacting the law in question; and those judges are entitled to such expense allowance as will enable them to live in manner becoming judges of Supreme Court of a great State; legislators may well have deemed it wise to make such provision in such amount as to obviate necessity for their taking from inadequate salaries money necessary to pay such expenses. Court will not presume that amount and necessity for these expenses was not investigated by Legislature, and its determination as to facts can not, under any principle of constitutional law, be disturbed by Court unless amount allowed is so plainly and palpably in excess of any amount of expenses which could possibly be incurred by said judges in discharge of official duties as to show, without evidence or argument, beyond reasonable doubt, that Legislature intended to increase salary and not to provide for such expenses. This Court may and should take judicial notice of increased cost of transportation and living in 1921 as compared with such cost in 1911 (when statute involved in McCoy v. Handlin was enacted.) And if it does not, by argument deduced from language of the law itself, or from matters of which court will take judicial notice, appear that it is in conflict with Constitution, the act must stand; and under this rule, the act in question does not appear to grant an excessive expense allowance.

14. **Constitutional Law—Facts Assuring Constitutionality, Judicial Presumption That they Exist—Rule.**

If under any possible state of facts the acts in question can be held constitutional, Court is bound to presume such facts existed. So held, in approving Chap. 400, Laws 1921, amending Sec. 5131, Code 1919.

15. **Fees and Salaries—Supreme Court Judges, Expense Allowance of $1800 Per Year, If Excessive, Whether Judicial Notice Taken—Bad Faith of Legislature Not Presumed.**

While an expense allowance to a state officer might be so great that on its face, without argument, it would furnish conclusive evidence that Legislature did not and could not believe or intend it was for expenses incurred or that might be incurred, yet this Court cannot take judicial notice of the fact, if it be fact, that an expense allowance of $1800 per year to

each of the Supreme Court judges is so excessive that we could hold the Legislature in making it acted in bad faith and in fact increased their salaries in violation of Constitution.

16. **Same—Whether Excessive Expense Allowance, Not Provable By Witnesses Or Experts—Matter of Legislative Judgment.**

Whether or not a legislative expense allowance to judges of Supreme Court is execessive, cannot be proved as a fact by witnesses for purpose of holding the law unconstitutional; it is not matter of expert opinion, but one to be estimated—a matter of judgment belonging to legislative branch of government.

17. **Same—Expense Allowance to Supreme Judges—Changed Conditions Since Statehood—Question of Legislative Policy.**

Nearly thirty-two years having passed since statehood and adoption of state Constitution, many things may be deemed advisable or necessary now that were not thought of at that time. It may now be believed that habit or custom of providing for expenses of public officers in lump sum is unwise and liable to abuse; but whatever the members of this Court may think as to wisdom of such legislation, it is not a judicial, but a question of policy with which courts are not concerned.

PART II.

1. **Constitutional Law—Fees and Salaries—$50. Monthly Legislative Allowance To Secretary of State, Treasurer, Supt. of Public Instruction, Comr. School and Public Lands—Whether Required to Reside At Capital—Lump Sum Appropriation Held Constitutional.**

Under Sec. 7060, Code 1919 (originally Chap. 365, Laws 1917), providing that whenever Secretary of State, State Auditor, State Treasurer, Superintendent of Public Instruction or Commissioner of School and Public Lands, whose legal residence is at some place other than state capital, shall have changed his place of actual residence to the capital, there shall be paid him in consideration "of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, the expenses of traveling to and from such legal residence, the fixed sum of $50. for each month, payable upon the certified vouchers of such officers filed in the office of the State Auditor;" and Secs. 6, 22, 24 and 27, Chap. 21, Laws 1921, in effect appropriating money sufficient to pay each of the intervening officers herein (including all designated in said act save State Auditor) the sum authorized by said Sec. 7060; and Const., Art. 21, Sec. 2, in effect providing that each and all of said officers shall receive an annual salary of $1800, and that "they shall receive no fees or perquisites whatever for the performance of any duties connected with their offices. It shall not be competent for the Legislature to

increase the salaries of the officers named in this article except as herein provided;" and Art. 4, Sec. 12, providing that said officers shall respectively keep their offices at the seat of government; **held,** it being conceded that all of said officers interveners, in order properly and efficiently to conduct their offices, have become actual residents of Pierre, although prior to assuming official duties as such officers they resided in other cities and parts of the state, and that each of them voluntarily changed his place of actual residence to the capital—that said officers are not required by any law, constitutional or statutory, to reside at state capital, that they are simply required under Constitution to keep their offices at seat of government; and that it was within legislative power to provide, as it did under said statutes, for expenses of intervening constitutional state officers a lump sum as so provided, provided such sum did not exceed the actual expenses it was designed to cover. That nearly every reason for sustaining lump allowances to Supreme Court judges in Part One of this opinion, applies with equal force to said intervening officers; the fact that said intervenors are required to keep their offices at capital does not prevent Legislature from allowing to them the right to such expenses as they would necessarily incur had they retained their actual places of residence where they resided when elected, and had they made frequent trips to and from capital.

2   Same—Statute Held Valid, Writ of Prohibition Against Auditor Denied.

For reasons given in Part One of this opinion, Sec. 7060, Code 1919, **held** valid, and writ of prohibition against State Auditor prohibiting him from issuing state warrants to intervenors to cover that part of the appropriation due them, is denied.

## PART III.

1.   Constitutional Law—Fees and Salaries—Circuit Judges—Travel, Hotel Expenses, Supplies, Etc., In Making Circuit, Judicial Notice of Conditions and Incidental Expenses

While nearly all said in Part One of this opinion applies equally to issues relating to Circuit Court judges, there are certain facts in this proceeding of which Court will take judicial notice, different from those considered in Parts One and Two, i. e., that there are a number of counties constituting the circuit of each of said judges; it is necessary for them to hold terms at county seat of each said counties, and that in so discharging their duties they must go from county to county and be absent from home much of time, that thereby they necessarily incur expenses of travel, hotel bills, telephone bills, stationery, office supplies and other expenses incident to dis-

charge of such duties; that such expenses are very much greater than when Constitution was adopted. The $2500. salaries allowed them are so inadequate, that Legislature presumably deemed it a duty to make an allowance to each judge for such expense as they must necessarily incur in performing official duties.

2.    Same—Whether $75. Per Month Expense Allowance inadequate, Immaterial—Legislative, Not Judicial Question—Part One Followed.

It is unimportant herein whether or not expense allowance of $75. per-month to each Circuit Judge is inadequate to reimburse them for actual necessary expenditures in discharging official duties. For reasons given in Part One, it was within legislative power to allow lump sum expenses; and Court cannot substitute its judgment therefor, or interfere with purely legislative acts, unless amount allowed is so plainly and palpably excessive, etc.; and writ of prohibition is denied.

PART IV.

1.    Constitutional Law—Judicial Power, Supervision Over Legislative, Confined to Question of Constitutionality—Appropriation For Official Expenses, As Legislative Discretionary Power—Plenary Legislative Power, Exists When.

There being no constitutional provision giving judicial supervisory power or control over Legislature, the state judiciary is powerless to interfere, so long as a legislative act does not contravene some express provision of Constitution, however inconsiderate, illogical or shocking such act may be; and, a legislative appropriation to pay expenses incurred by state officials being the exercise of such power, the Legislature is vested with discretion as to what expenses it will or not provide funds for payment of, which decision is final. If Legislature fails to make reasonable provision for such expenses, officers are without remedy, the judiciary having no power of drect appropriation of funds, or of coercing Legislature to act; while if Legislature makes lavish and extravagant allowances, Court is equally powerless to correct the error. In absence of constitutional limitations, inherent plenary power is vested in Legislature in all legislative and political matters.

2.    Constitutional Law—Fees and Salaries—Governor, Rent of Hotel Rooms At Capital, As Official Expenses, Whether Constitution Forbids—Appropriation For, Whether For "Private Expenses," Or Increasing Constitutional Salary—Judicial Credit to Legislative Act, Presumption Re.

Under Const., Art. 21, Sec. 2, providing in part that the Governor shall receive an annual salary of $2500., provided, that Legislature may after 1890 increase his salary to $3000.,

and that he and other state officers therein specified "shall receive no fees or perquisites whatever for the performance of any duties connected with their offices. It shall not be competent for the Legislature to increase the salaries of the officers named in this article, except as herein provided;" Chap. 101, Laws 1901, increasing salary of Governor and Supreme Court judges to $3000.; Const., Art. 3, Sec. 1, vesting legislative power of state in a Legislature, except that certain provisions are made for initiative and referendum; and Laws 1921, Chap. 21, Sec. 13, appropriating, in addition to $3000. for Governor's salary for each year of the biennial period, etc., an allowance of $9400. for each such year "For salary of private secretary, clerk hire, stenographers, stationery, office supplies, postage, railroad fare, hotel, rent and living expenses and other traveling expenses and incidentals;" held, that Court cannot presume that Legislature intended to violate Constitution, or that such appropriation, as applying to "hotel, rent and living expenses," was intended as an increase of Governor's salary; that as a co-ordinate branch of government, Court is bound to give full faith and credit to the legislative act, and to assume it was intended to pay an item of expense which in its judgment was a proper item to be paid from state funds. So held, where pleadings show the Governor (intervenor herein), prior to assuming office resided in Yankton, S. D., that his official duties require his actual residence in Pierre, the capital, that such duties required him to change his actual residence to Pierre, and that he actually occupied rooms at a hotel in Pierre during the period in question, and the money defraying such expenses is paid directly to proprietors of the hotel on proper vouchers certified by the Governor. Held, further, that this case is to be distinguished from one where a certain sum is appropriated to be paid the official whether he actually incurs the expense or not. The appropriation in question was not for "private expenses" of the Governor, and does not contravene the last clause in said Art. 21, Sec. 2, concerning increase of salaries.

3. **Public Expenditures—Governor, Whether Constitution Requires Him to Reside at Capital—Right to Travel Between Legal Residence and Capital—Hotel Expenses At Capital, Travel Expenses, Whether Incurred Officially.**

There is no law requiring Governor to reside at state capital; he could have continued his residence at Yankton and have traveled back and forth between there and Pierre, and have lodged at a hotel while at the capital; and his expenses incurred in such travel and lodging would have been legitimate expense payable by state as incurred incident to and in performance of his duties as Governor; hence, to avoid waste of time in travel and expense incidental thereto, it is deemed expedient to have

Governor reside at capital; thus necessitating maintenance of a place of residence at Pierre in addition to his home in Yankton; no profit being derived from rooms so occupied by him, but being additional expense incurred officially.    Moreover, in absence of contention that the $3000. salary was to be in full payment for both services and expenses, an expense allowance, properly payable by state, does not operate to increase constitutional salary.

4.   Same—Constitutional Prohibition Re Salaries, Non-applicable to Expenses.

The prohibition, in Const., Art. 21, Sec. 2, against increasing salaries of public officers, was not intended as a limitation upon legislative authority to provide for their expenses.

5.   Constitutional Law—Judicial Declaration of Unconstitutionality, As Extraordinary Power, Reasonable Doubt Must Exist—Writ Denied.

It is a well settled rule of law, that court's power to declare a legislative act unconstitutional is an extraordinary power, exercisable only in a case free from reasonable doubt.    The appropriation to pay rent for rooms occupied by Governor at a hotel at the capital not being, beyond such doubt, within the constitutional prohibition, writ of prohibition against State Auditor, prohibiting him from issuing to Governor a state warrant to cover the expenses involved, is, so far as Part Four of this opinion is concerned, denied.

V.

1.   Constitutional Law—Taxation—Public Expenditures—Governor's Home, Survey For, Appropriation to Pay, Whether For "Public Purpose"—Rule Re Hotel Expenses Followed.

Chap. 84, Second Special Session Sixteenth Legislature (1920) authorizes State Capitol Commission to prepare plans for Governor's home, secure grounds for a site therefor, prepare the grounds for building, and to present plans for completed building and improvement at next regular session of Legislature, for which purpose the Commission is authorized to use funds provided for by Laws 1919, Chap. 322.    Held, following this opinion in Part Four relating to appropriation to pay Governor's expenses at a Pierre hotel,—that, the Legislature being authorized to make the latter appropriation, it may through the appropriation in said Chap. 84, provide for acquiring a dwelling for use by Governor.    So held, against state's contention that such appropriation act violates Const., Art. 11, Sec. 2, providing that taxes shall be levied and collected for public purposes only.

2.  **Same—Public Buildings, Non-prohibition of By Constitution, Legislative Power Re Such Expenditures Unrestricted, No Judicial Review.**

Since Constitution does not prescribe what public buildings shall be provided, or uses they may be put to, the subject is left to Legislature; and when in exercise of its discretion it provides for a public building for public purposes, its decision is final and not subject to judicial review.

3.  **Same—Executive Official Residence, Whether Public Building— Whether Occupancy a "Perquisite."**

In deciding whether or not an official residence for the chief executive of a state is a public building devoted to a public purpose, history and practice of similar governments must be considered. The United States has its White House, and many states have their Executive mansion. The practice of furnishing an official residence for chief executive officer of government has for many years been in force in representative governments such as ours; Great Britian provides one for its Prime Minister. This practice was followed upon formation of the United States, and many states of the Union, recognizing the added dignity of office and other advantages, derived from such executive residence being certain in location and convenient of access, have provided such residences for Governor's use, some of which states have similar constitutional restrictions to those in this state regarding acceptance of perquisites; and Legislature had power, right and authority to purchase the property in question and to provide for its occupancy by Governor; this as promotive of public welfare; his occupancy thereof, required by law, is not a perquisite of office, nor of the nature of additional compensation. In this connection, the fact that it may be doubted whether occupancy of such residence does not impose upon the Governor larger expenditures then when occupying a more humble abode for which he paid the usual rent, and, in place of being an additional reward or compensation, it may be an additional drain upon his resources, appeals strongly to our judgment.

Hayes, P. J., Dissenting.

Original proceeding by the State of South Dakota, on the relation of Byron S. Payne, Attorney General, against Jay Reeves as State Auditor of the State of South Dakota, to restrain and prohibit defendant from drawing and issuing warrants on the State Treasurer for purposes therein specified; the petition consisting of five parts, each relating to a separate special proceeding; "Part One" relating to an expense allowance of $150.00 per month, to Samuel C. Polley, John Howard Gates, Charles S.

Whiting, Ellison G. Smith, and James H. McCoy, as Judges of the Supreme Court of the State of South Dakota, intervening defendants; "Part Two" to an expense allowance of $50.00 per month to C. A. Burkhart as Secretary of State, W. S. O'Brien as State Treasurer, Fred L. Shaw as Superintendent of Public Instruction, and N. E. Knight as Commissioner of School and Public Lands, intervening defendants; "Part Three" to an expense allowance of $75.00 per month to R. B. Tripp, L. L. Fleeger, John T. Medin, W. N. Skinner, Frank B. Smith, Frank Anderson, John F. Hughes, Walter G. Miser, James F. McNenny, Alva E. Taylor, Joseph H. Bottum, N. D. Burch, John G. Bartine and W. F. Eddy, as Judges of the Circuit Court of the State of South Dakota, intervening defendants; "Part Four" to rent of living rooms of William H. McMaster as Governor, at the state capital; and "Part Five" to the power of the Legislature to erect a Governor's Mansion; his Excellency having intervened as defendant as to "Parts Four and Five" of the petition, and having filed an answer or return as to each Part; all of said other intervening defendants having also joined, as to their respective Parts of the petition, in filing respective answers or returns thereto. As to each and all of said "Parts," writ denied.

*Byron S. Payne,* Attorney General, and *E. D. Roberts,* Assistant Attorney General, for Plaintiff.

*Gardner & Churchill,* and *Haney & McCoy,* for Supreme and Circuit Court Judges.

*Martens & Goldsmith,* for all other Intervenors.

Each of the regular Supreme Court judges and each of the Circuit Court judges of this state being interested and therefore disqualified, the Supreme Court under Article 5, Section 7, of the State Constitution, and Chapter 343, Session Laws of 1919, appointed, from the qualified practicing attorneys of the state; *Robert C. Hayes* of Deadwood, *George Rice* of Flandreau, *T. H. Null* of Huron, *A. H. Orvis* of Yankton, and *L. W. Bicknell* of Webster, to act as judges of the Supreme Court in this proceeding, and to hear, try and determine the issues involved and to enter judgment accordingly, and said persons having qualified as required by law, and having organized as the Supreme Court by electing *Robert C. Hayes,* Presiding Judge, proceeded to hear, try and determine said issues.

## PART I.

(2) To point two of the opinion, Part I, Plaintiff submitted that: Chap. 400, Laws 1921, is without authority of law and violative of Const., Art. 5, Sec. 30; and cited: Const., Art. 11, Sec. 9; Art. 12, Sec. 4; Art. 22, Sec. 2; Sec. 5347, Code 1919; Love v. Baehr, 47 Cal. 364. That McCoy v. Handlin, 35 S. D. 490, wherein it held that Sec. 5131, Code 1919, is constitutional, is unsound in principle, and, in view of the constitutional amendment and the statute enacted pursuant thereto, under which this substitute Court is created, that opinion should be considered anew and not be regarded as a binding precedent herein; citing Truxton v. Fiat & Slagle Co. (Del.) 73 A. S. R. 81. That "compensation" means suitable reward for services, citing: Words and Phrases, Vol. I, page 826; State v. Sheldon (Neb.) 111 N. W. 372; re terms of Supreme Court and where held, cited: Chap. 73, Laws 1890; Sec. 5132, Code 1919.

All Interveners save the Supreme and Circuit Court judges, cited: Burns v. Board of County Commissioners, 39 S. D. 426; Laws 1911, Chap. 239; Laws 1917, Chap. 365; State v. Hackman, 276 Mo. 507.

The Supreme and Circuit Court judges, submitted that: Sec. 2, Art. 21, and Sec. 30, Art. 5, Const., relate alone to compensation for official services; that no part of the salary is required to be used in payment of expenses incurred by the official in discharge of his official duties; and that Const. does not limit power of Legislature in payment of expenses to the judges, and that Laws 1911, Chap. 239, and Laws 1921, Chap. 400, are valid.

(3) To point three, Part I, of the opinion, Plaintiff cited: 6 R. C. L. Sec. 111; 12 C. J. 887; People ex rel. Wemple, 115 N. Y. 302.

The Supreme and Circuit Court judges, cited: State v. Thomason, 142 Tenn. 527; Russ v. Commonwealth, 210 Pa. 544, 60 Atl. 169, 1 L. R. A. (N. S.) 409.

All Interveners save Supreme and Circuit judges cited: 12 C. J. 750; Id. 702, 788; State ex rel. Longstaff v. Anderson, 33 S. D. 574.

(5) To point five, Part I, Plaintiff cited: Halsey & Co. v. City of Belle Plaine, (Ia.) 104 N. W. 494; People v. Harding (Mich.) 19 N. W. 155; Cox v. Robinson, (Tex.) 150 S. W. 1149.

(8)  To point eight, of Part I, of the opinion, all Interveners save the Supreme and Circuit Court judges, cited:  12 C. J. 791, and cases there cited.

(9)  To point nine, Part I, of the opinion, all Interveners save the Supreme and Circuit Court judges, cited:  Const., Art. 5, Sec. 1; Art. 5, Sec. 7, as amended in 1918; Laws 1919, Chap. 454; and that doctrine of stare decisis applies re McCoy v. Handlin, 35 S. D. 490, they cited:  Youmans v. Hanna (N. D.) 161 N. W. 797; State ex rel. Lavin v. Bacon, 32 S. D. 284.; Fisher v. Horicon Iron & Mfg. Co., 10 Wis. 355; Flannery v. Given's Admnr. (Ky.) 52 S. W. 962.

The Supreme and Circuit Court judges, cited, to point that the rule of stare decisis applies:  People v. Alturas County, 6 Idaho, 418, 55 Pac. 1067, 44 L. R. A. 122; Walling v. Brown, 9 Idaho, 740, 76 Pac. 318, 2 Ann. Cas. 720 and note; Pouch v. Prudential Ins. Co. 204 N. Y. 281, 97 N. E. 731, Ann. Cas. 1913G 1191; Judges' Cases, 102 Tenn. 509, 53 S. W. 134, 46 L. R. A. 567; State v. Nashville Baseball Club, 127 Tenn. 292, 154 S. W. 1151, Ann. Cas. 1914B, 1243 and note.  As sustaining McCoy v. Handlin, cited: Smith v. Jackson, 241 Fed. 749; 154 C. C. A. 449, affirmed 246 U. S. 388, 62 Law Ed. 788; State v. Thomason, 142 Tenn. 527, 221 S. W. 491; Macon County v. Williams (Mo.) 224 S. W. 835; State v. Kositzky, 38 N. D. 622, L. R. A. 1918D 237.

(10)  To point ten, Part I, of the opinion, all Interveners save the Supreme and Circuit Court judges, cited:  McCoy v. Handlin, 35 S. D. 490; Kirkwood v. Soto, 87 Cal. 394, 25 Pac. 488; Briscoe v. Clark, 95 Ill. 309; State v. County Commissioners, 19 Nev. 332, 10 Pac. 901; State ex rel. Birmingham v. Hackman, 276 Mo. 507, 207 S. W. 498; Smith v. Jackson, 241 Fed. 769, affirmed 246 U. S. 388, 62 L ed. 788.

(12)  To point twelve, Part I, of the opinion, Plaintiff cited:  People ex rel. Bolton v. Albertoson, 55 N. Y. 50; People v. Brady, 277 Ill. 124.

The Supreme and Circuit Court judges submitted that:  It will be presumed, where constitutionality of an act involves determination of facts by Legislature, that such determination was made; citing Alexander B. Andrews' pamphlet of Jan. 11, 1921, and supplement thereto dated Aug. 15, 1921, entitled "Per Capita Cost of Courts."  That validity of legislation necessary or proper

under given state of facts, does not depend on actual existence of the supposed facts; it is sufficient if law-making body may rationally believe such facts to be established; citing Ex parte Yun Quong, (Cal.) 114 Pac. 835; People v. Durston (N. Y.) 24 N. E. 6.

(14) To point fourteen, Part I, of the opinion, the Supreme and Circuit Court judges cited: Queen City Ins. Co. v. Basford, 27 S. D. 164; State v. Central Lumber Co., 24 S. D. 136.

(15) To point fifteen, Part I, the Supreme and Circuit Court judges cited: Noyes v. Des Moines Club, 170 N. W. 46, 3 A. L. R. 605 and note.

(16) To point sixteen, Part I, of the opinion, the Supreme and Circuit Court judges cited: State v. Tower (Mo.) 84 S. W. 10; McGuire v. C. B. & Q. R. R. Co. (Iowa) 108 N. W. 902; Calder v. People of Michigan, 218 U. S. 591.

## PART II.

(1) To point one, Part II, of the opinion, Plaintiff cited: Sec. 7060, Code 1919; Const., Art. 4, Sec. 12; Clyne v. Bingham County (Utah) 60 Pac. 86.

All Interveners save Supreme and Circuit Court judges cited: Chap. 365, Laws 1917; Sec. 7060, Code 1919; Const., Art. 4, Sec. 12.

(9) To point nine, Part II, Plaintiff cited: Clyne v. Bingham County, (Utah) 60 Pac. 86.

## PART III.

(1) To point one, Part III, of the opinion, Plaintiff cited: Chap. 159, Laws 1919.

(2) To point two, Part III, Plaintiff cited: Hodges v. Snyder (S. D.) 178 N. W. 575; Ill. Cent. Ry. Co. v. Quarry Co. (S. D.) 144 N. W. 724.

## PART IV.

(2) To point two, Part IV, of the opinion, Plaintiff cited: Terrell v. Middleton, (Tex.) 187 S. W. 367; Clyne v. Bingham County (Utah), 60 Pac. 86; Leekenby v. Post Printing & Publishing Co. (Colo.), 176 Pac. 490; Bailey v. Kelly (Kas.) 79 Pac. 735; State ex rel. Fox v. Raine (Ohio) 31 N. E. 741; Cullom v. Dolloff, 94 Ill. 330; Sec. 13, Chap. 21, Laws 1921; Fergus v. Russell, (Ill.) 110 N. E. 130; Chap. 84, Laws 1919.

All Interveners save the Supreme and Circuit Court judges, cited: Chap. 31, Laws 1921, Sec. 13.

## PART V.

(1)  To point one, Part V, all Interveners save the Supreme and Circuit Court judges, cited: Laws 1920, Chap. 84; Const., Art. 21, Sec. 2; State v. Sheldon (Neb.) 111 N. W. 372; Furgus et al. v. Russell et al., 270 Ill. 304, 110 N. E. 130, 40 Ann. Cas. 1120.

ORVIS, J.  This is an original proceeding commenced in the Supreme Court by the plaintiff, state of South Dakota, on the relation of Byron S. Payne, its Attorney General, seeking to restrain and prohibit the defendant, Jay Reeves, as Auditor of said state, from drawing and issuing warrants on the State Treasurer for purposes hereinafter stated.

Plaintiff's petition consists of five parts, numbered from I to V, both inclusive, each relating to a separate special proceeding.

"Part I" relates to an expense allowance of $150 per month to each of the Supreme Court judges; "Part II" to an expense allowance of $50 per month to each of the state officers named above as interveners, other than the Governor and judicial officers; "Part III" to an expense allowance of $75 per month to each of the circuit court judges; "Part IV" to rent of living rooms of the Governor at the state capital; and "Part V" to the power of the Legislature to erect a Governor's mansion.

Each of the regular Supreme Court judges and each of the circuit court judges of this state being interested and therefore disqualified, the Supreme Court, under article 5, § 7, of the State Constitution, and chapter 343, Session Laws of 1919, appointed, from the qualified practicing attorneys of the state, Robert C. Hayes, of Deadwood, George Rice, of Flandreau, T. H. Null, of Huron, A. H. Orvis, of Yankton, and L. W. Bicknell, of Webster, to act as judges of the Supreme Court in this proceeding, and to hear, try, and determine the issues involved and to enter judgment accordingly, and said persons having qualified as required by law, and having organized as the Supreme Court by electing Robert C. Hayes, Presiding Judge, proceeded to hear, try, and determine said issues.

Samuel C. Polley, John Howard Gates, Charles S. Whiting, Ellison G. Smith, and James H. McCoy, as the regular Supreme

Court judges of this state, having been permitted to intervene, joined in an answer or return to "Part I" of the petition.

C. A. Burkhart, as Secretary of State, W. S. O'Brien, as Treasurer, Fred L. Shaw, as Superintendent of Public Instruction, and N. E. Knight, as Commissioner of School and Public Lands, all of the state of South Dakota, were permitted to intervene, and they also joined in an answer or return to "Part II" of the petition.

R. B. Tripp, L. L. Fleeger, John T. Medin, W. N. Skinner, Frank B. Smith, Frank Anderson, John F. Hughes, Walter G. Miser, James F. McNenny, Alva E. Taylor, Joseph H. Bottum, N. D. Burch, John G. Bartine, and W. F. Eddy, as judges of the circuit court of this state, have likewise been permitted to intervene, and they have joined in an answer or return to "Part III" of the petition.

W. H. McMaster, as Governor of this state, has intervened and filed an answer or return to "Parts IV and V" of the petition.

The defendant, Jay Reeves, as Auditor of the state, has filed a general demurrer to the petition and to each and every part thereof.

The real parties in interest in this proceeding are the state of South Dakota and the interveners. All material facts are conceded by the parties in interest, and the only issues for determination are questions of constitutional law.

### PART I.

The essential facts to be considered in the special proceeding designated as "Part I" are: The interveners Samuel C. Polley, John Howard Gates, Charles S. Whiting, Ellison G. Smith, and James H. McCoy are the duly elected, qualified, and acting judges of the Supreme Court of the state of South Dakota; the legal and actual residence of each of said Supreme Court judges at the time he first entered upon the discharge of his duties as one of the judges of said court was at a place other than the city of Pierre, the capital of South Dakota; each of said judges, at or about the time he first entered upon the discharge of his duties as one of the judges of said court, changed his place of actual residence to said city of Pierre, and since said time has resided in said city. Each of said judges, under the Constitution of this

state, has retained his legal residence at his former place of actual residence, and each of said judges voluntarily changed his place of actual residence for the sole purpose of enabling him more efficiently to discharge his official duties.

[1]   The Constitution of this state does not require the judges of the Supreme Court to reside at the state capital, and, except "that at least two terms of the Supreme Court shall be held each year at the seat of government," it does not require the judges to perform any of their official duties at the state capital.

[2]   Section 5131 of the South Dakota Revised Code of 1919, originally enacted as chapter 239, Laws of 1911, is as follows :

"Whenever a judge of the Supreme Court whose legal residence shall be at some place other than the state capital shall have changed his place of actual residence to the capital, there shall be paid to such judge, in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, and the expenses of traveling to and from such legal residence, the fixed sum of fifty dollars for each month, payable upon the certified voucher of such judge filed in the office of the State Auditor."

This section was amended by chapter 400, Laws of 1921, so that the law now allows the fixed sum of $150 for each month, instead of $50 as provided by the original law.   In other respects the original law remains unchanged.

The state Legislature, by section 25 of chapter 21 of the Laws of 1921, being the general appropriation act appropriating money for salaries and expenses of the executive and judicial departments of the state, appropriated and set aside the sum of $18,000 for the biennial period beginning July 1, 1921, and terminating June 30, 1923, for the payment of expenses of the judges of the Supreme Court of the state of South Dakota, as provided for in section 5131 of the South Dakota Revised Code of 1919, as amended by chapter 400, Laws of 1921.

The annual salary of each of the judges of the Supreme Court is fixed at $3,000, and under article 21, § 2, of the State Constitution, it is provided that—

"They shall receive no fees or perquisites whatever for the

performance of any duties connected with their offices.    It shall not be competent for the Legislature to increase the salaries of the officers named in this article except as herein provided."

Again, article 5, § 30, of the State Constitution, provides:

"The judges of the Supreme Court, circuit courts and county courts shall each receive such salary as may be provided by law, consistent with this Constitution, and no such judge shall receive any compensation, perquisite or emoluments for or on account of his office in any form whatever, except such salary:    Provided, that county judges may accept and receive such fees as may be allowed under the land laws of the United States."

It is contended by plaintiff that the allowance of $150 per month to each judge of the Supreme Court in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, and the expenses of traveling to and from such legal residence, is excessive and unreasonable; that said expense allowance is not based upon any actual expenses that a judge of the Supreme Court might or does reasonably incur incident to the discharge of his duties as such officer; and that said allowance is, in effect, an allowance for living expenses and operates to increase the salary or compensation of each of the Supreme Court judges, and is in contravention of the provisions of the state Constitution above quoted.

It is contended by the Supreme Court judges that the reasonableness of the amount allowed as expenses by chapter 400, Laws of 1921, was a matter wholly within the discretion of the Legislature; that this determination, presumptively made upon due investigation and consideration of all the material facts and circumstances and without intent to violate the state Constitution, cannot be disturbed by this court unless the amount allowed is so plainly and palpably in excess of any amount of expenses which could possibly be incurred by the judges in the discharge of their official duties as to show without evidence or argument, beyond all reasonable doubt, that the Legislature intended to increase the salary of the judges and not to provide for the payment of expenses incident to the discharge of official duties.

Plaintiff also contends that section 5131 of the Revised Code of 1919, as the same was originally enacted, is unconstitutional, for the reason that if the expenses allowed exceed actual expenses

necessarily the excess operates as an increase of salary, and therefore is in violation of the constitutional provisions hereinbefore quoted.

[3]   It is a fundamental rule that the state Constitution is a limitation of power restrictive in its nature, and that the Legislature has every power except that delegated to the federal government and that restricted or limited by the state Constitution. The generally accepted doctrine is that the Legislature may pass any acts that are not expressly or by necessary implication inhibited by their own Constitution or by the federal Constitution. 12 C. J. 746.

[4]   The Constitution of this state does not contain any restrictions upon the power of the Legislature to make allowance for the expenses of the several constitutional state officers who are interveners in this proceeding.   What the representatives of the people have not been forbidden to do by the organic law, that they may do.   Russ v. Commonwealth, 210 Pa. 54, 60 Atl. 169, 1 L. R. A. (N. S.) 409, 105 Am. St. Rep. 825.

[5]   In construing a constitutional provision the fundamental purpose is to ascertain and give effect to the intent of the framers and of the people who adopted it.   The court therefore should constantly keep in mind the object sought to be accomplished by its adoption and the evils, if any, sought to be prevented or remedied.   Constitutional provisions are presumed to have been more carefully and deliberately framed than is the case with statutes; hence it is sometimes said that less latitude should be indulged by the courts in their construction, but, on the other hand, courts are not at liberty to declare an act void because they deem it opposed to the spirit of the Constitution.   12 C. J. 702.

[6]   No legislative act should be declared unconstitutional unless the conflict between its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its validity.   State ex rel. Longstaff v. Anderson, 33 S. D. 574, 146 N. W. 703; In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; State v. Becker, 3 S. D. 29, 51 N. W. 1018; Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147; State v. Summers, 33 S. D. 40, 144 N. W. 730, 50 L. R. A. (N. S.) 206, Ann. Cas. 1916B, 860.

The Supreme Court of this state has on many occasions laid

down the rule that an act of the Legislature will not be held unconstitutional unless its unconstitutionality appears plainly beyond a reasonable doubt. Metropolitan Casualty Ins. Co. v. Basford, 31 S. D. 149, 139 N. W. 795.

[7] When reasonably possible a statute must be so construed as to uphold its validity; indeed, a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts on that score. If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, it is the duty of the court to adopt that construction which, without doing violence to the fair meaning of the language, will render it vaild. 12 C. J. 788, citing South Dakota cases among others.

[8] A presumption in favor of constitutionality is raised by the mere fact of the enactment of the statute by the Legislature. 12 C. J. 791, citing South Dakota cases among others.

This court in Queen City Insurance Co. v. Basford, 27 S. D. 164, 130 N. W. 44, in an opinion by Judge Corson, said:

"The power of the court to declare an act of the Legislature unconstitutional is an extraordinary power and should only be exercised in a case free from all reasonable doubt."

[9] Section 5131, Revised Code of 1919, first enacted as chapter 239, Laws of 1911, was in 1915 before this court for construction in McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046. Handlin, then State Auditor, refused to issue a warrant to McCoy, one of the Supreme Court judges, for the expense allowance of $50 per month provided for by said law, claiming that the law was unconstitutional because in contravention of the provisions of the state Constitution hereinbefore quoted. McCoy made application to the Supreme Court for a writ of mandamus compelling Handlin, as State Auditor, to issue a warrant upon the State Treasurer for the expense allowance which he claimed was due him. Every judge of the Supreme Court was interested, but at that time there was no other court in which the proceeding could be heard, tried, and determined, and no method provided by the Constitution or any statute for the calling in of substitute judges to hear, try, and determine the proceeding. Under those circumstances the Supreme Court held that, as a matter of necessity, it had jurisdiction

and that it was its duty to determine the proceeding. The decision of the court on that question undoubtedly was right. It is sustained by practically all courts of last resort, and the Attorney General concedes that on that question the decision was correct. The court also decided that chapter 239, Laws of 1911, did not violate any provision of the state Constitution.

This court, as now constituted for the decision of this proceeding, might, under the doctrine of stare decisis, hold that the precise questions before the Supreme Court in McCoy v. Handlin are no longer open to controversy in this state; but as the judges of the Supreme Court in their answer have expressly declined to avail themselves of the doctrine of stare decisis, we shall consider that decision the same as we would had it been made by the Supreme Court of some other state, and shall give it only such consideration and effect as in our judgment it merits by reason of the authorities cited and reasons stated therein. We believe that decision has never been criticized by any court. On the contrary, it has been cited, approved, and followed by courts of the highest standing in other jurisdictions.

[10, 11]   In Smith v. Jackson, 241 Fed. 749, 154 C. C. A. 449, United States District Judge Clayton rendered a decision which involved the question of what should be considered emoluments. After judgment in that case an appeal was taken therefrom to the Circuit Court of Appeals of the Fifth Circuit, where the judgment appealed from was affirmed, and where the Circuit Court of Appeals adopted the opinion of Judge Clayton as its own without change. 241 Fed. 747, 154 C. C. A. 449. An appeal was then taken from the judgment of the Circuit Court of Appeals to the United States Supreme Court, where the judgment was affirmed. 246 U. S. 388, 38 Sup. Ct. 353, 62 L. Ed. 788. Judge Clayton, in his opinion, speaking of the word "emolument," said:

"The definition of the term is ascertained from adjudged cases cited in Words and Phrases, vol. 3, p. 2367, where it is said: 'Emolument is the profit arising from office or employment; that which is received as compensation for services, or which is annexed to the possession of office, as salary, fees, and perquisites.' I think it may be said, therefore, that an emolument is something positively and directly conferred as compensation, or gain, that

the holder of an office receives, and not something necessarily, inseparably, and incidentally used by him in the discharge of his duty, a duty for which he is paid a fixed salary. * * * This question here is analogous to the one involved in McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858. In that case the contest was over an extra allowance of a specified sum per month to such judges of the Supreme Court as take up their residence at the capital (of South Dakota) to meet the extra expenses thereby caused."

After quoting the provisions of the South Dakota Constitution, and in speaking of the opinion in McCoy v. Handlin, he said:

"The opinion was well considered, instructive, and is illuminating in the consideration of the instant case."

Between one and two pages of the printed opinion in McCoy v. Handlin are quoted and made a part of the opinion of Judge Clayton.

The Supreme Court of Tennessee, in State v. Thomason, 142 Tenn. 527, 221 S. W. 491, wherein a lump sum expense allowance was sustained, also cites McCoy v. Handlin with approval. The same is true of the Missouri Supreme Court, in Macon County v. Williams, 224 S. W. 835.

In State ex rel. Langer v. Kositzky, 38 N. D. 616, 166 N. W. 534, L. R. A. 1918D, 237, McCoy v. Handlin is cited in support of the proposition that when the amount of a claim based upon a valid law is fixed by law, so that there is no dispute as to the amount of the claim, it then becomes the duty of the Auditor to allow it, and to issue a warrant upon the State Treasurer therefor, provided, of course, that money has been appropriated for the payment thereof.

That an allowance for expenses actually incurred by an officer incident to the performance of the duties of his office is neither emoluments nor perquisites is well settled, and this is conceded by the Attorney General and his assistant in this proceeding. Has the Legislature power to allow expenses in a lump sum? We are convinced that it has, provided it does not make the allowance greater than the expenses it was designed to cover. It was so held by this court in McCoy v. Handlin, supra. The court in its opinion in that proceeding called attention to the fact that the Constitution of this state, as well as the Constitutions of

nearly all the other states, contains no provision requiring the
judges of the appellate court to reside at the capital, and that it
would therefore have been entirely proper and legal for the plain-
tiff in that proceeding (Judge McCoy) to have retained his actual
residence at Aberdeen, the place of his legal residence, just as
many of the judges in other states live away from the capital.
The court said:

"If the judges of this court continued to reside at the places
of their legal residence, no question, under any authority, could
be raised as to the constitutionality of a law which appropriated
money to reimburse them for their actual expenses incident to
their travel to and from, and for their hotel bills while at, the
capital. Such an allowance would leave to the judges clear, as
compensation for their official services, the salary provided by
law, and no one could, and we apprehend no one would, say that
they received perquisites or emoluments. In view of the number
of trips that would have to be made to the capital and the number
of days that would have to be spent there, it is clear that the
aggregate of such expenses would be in excess of $600 per year
for each judge so living away from the capital. Let us suppose
that the several judges of this court were living at the places of
their legal residence, and the Legislature were asked to enact leg-
islation to reimburse them for their actual expenses incurred in
going to and remaining at the capital, which expenses could, from
their nature, be itemized. Is it possible that such Legislature
could not say to the judges of this court: 'We believe that,
owing to the fact that the duties of your office require your pres-
ence at the capital a considerable portion of the time, you can bet-
ter discharge the duties of such office if you will reside at the
capital; hence, in the furtherance of a sound public policy, we ask
you to make your actual residence at the capital, and in order
that you may do so without financial loss to you, we will, in the
place of paying your expenses of traveling to and boarding at the
capital, while living at your places of legal residence, allow you
such a sum as will cover the extra expense incident to your mov-
ing to and living at the capital.'

"Would not the allowance in the one case be as much an
allowance for expenses, and in no sense a perquisite or emolument,
as in the other? Certainly it would; the only difference being that

in the one case the law could provide for the expenses to be itemized and the exact amount paid, while in the other, from the very nature of things, it would be necessary for the Legislature to estimate the reasonable and proper amount of such expenses and appropriate a lump sum therefor. If the Legislature could pass such a law to encourage the judges to move to the capital, for the same reasons it certainly could pass one where, prior thereto, the judges had voluntarily moved to the capital. * * * The Legislature had a right, in determining the advisability of this legislation, to take into account what would have been the probable allowance necessary to meet the expenses for which the judges would have been justly entitled to be reimbursed, if they had remained at their legal residences, and also to take into account the estimated amount of additional expense incident to moving to and living at the capital; so long as it has not exceeded either of these sums there is left no ground to claim that it has increased their salaries."

This lengthy quotation from the opinion in that proceeding is made because the reasoning of the court therein, and in the other cases referred to which have approved and followed it, is, to our minds, unanswerable. As said by Judge Clayton in Smith v. Jackson, supra:

"The opinion was well considered, instructive, and is illuminating in the consideration of the instant case."

We hold that the decision in McCoy v. Handlin has settled the law in this state on all the questions which it decided, not under the doctrine of stare decisis, but because the reasoning of the court in that decision is unanswerable.

[12] The questions now before this court, as constituted for the purposes of this proceeding, are the same as those before the court in McCoy v. Handlin, except that in this proceeding the amount of the allowance to each of the judges is $150 per month instead of $50. Does this fact require, or does it justify, a different decision? Applying the principles that are well settled in deciding constitutional questions, we are convinced that it does not. The Supreme Court of Tennessee, in State v. Thomason, 142 Tenn. 527, 221 S. W. 491, where an expense allowance in a lump sum was attacked on the ground that it was unconstitutional, said:

"It is urged that to sustain the power of the Legislature to make appropriations of the character here questioned will authorize or result in similar ones of larger amount. It may likewise be plausibly argued that in its control of the public finances the Legislature may authorize unwise and extravagant expenditures, but these insistences address themselves to the discretion of the Legislature in the proper exercise of its representative power, and are not pertinent to the judicial determination of the existence of that power. The exclusive control of the expenditure of the public moneys is vested in the legislative branch of the government, and is the subject of limitation by the courts only so far as provided by the Constitution."

Each member of the Legislature is required to take the same oath of office as is taken by each of the judges of this court, which is to support the Constitution of the United States and of the state of South Dakota. We cannot, at least in a doubtful case, presume that the members of the Legislature have intentionally violated their oaths of office.

[13] Whether the expense allowance of $150 per month to each judge of the Supreme Court is or is not excessive is a question depending to some extent upon the standard of living of the judges of the Supreme Court. The station or position in life of the party whose expenses are under consideration should be considered, and the Legislature in enacting the law now under consideration was dealing with the question of the expense of judges of the Supreme Court. Those judges are entitled under the Constitution to the salaries fixed by the Constitution, and they are entitled to such allowance for expenses as will enable them to live in a manner becoming the judges of the Supreme Court of a great state. The legislators may well have thought it the part of wisdom to make provision for the expenses of the judges in such an amount that it would not be necessary for them to take from their inadequate salaries the money necessary to pay such expenses. This court will not presume that the matter of the amount and the necessity for these expenses was not made the subject of proper investigation by the Legislature, and its determination as to the facts cannot, under any principle of constitutional law, be disturbed by this court unless the amount allowed is so plainly and palpably in excess of any amount of expenses which could pos-

sibly be incurred by the judges in the discharge of their official duties as to show without evidence or argument, beyond all reasonable doubt, that the Legislature intended to increase the salary of the judges and not to provide for the payment of expenses incident to the discharge of official duties. The question is not what this court might conclude would be a reasonable amount to allow the judges for expenses incurred in the discharge of their official duties, if it were authorized to fix such allowance, but whether the amount fixed by the Legislature is plainly and palpably in excess of any amount which the judges could possibly incur. In other words, this court, to sustain the contention of the learned Attorney General, must take judicial knowledge of the fact, if it be a fact, that $150 per month allowed to each of the judges as expenses is in excess of any amount that could possibly be incurred. It is the action of the Legislature—the chosen representatives of the people—which is under investigation in this proceeding, and not the action of the Supreme Court or its judges.

This court can and should take judicial notice of the increased cost of transportation and living in 1921 as compared with such cost in 1911, the time when the statute construed in McCoy v. Handlin was enacted. It is bound to presume that this change in conditions was duly considered by the Legislature. It is, of course, within the power of the Legislature to repeal or amend the law now under consideration, and it is to be presumed that whenever there is any substantial change in conditions affecting the matter the Legislature will duly consider such change and legislate accordingly. As was said by the Supreme Court of California, in Ex parte Yun Quong, 159 Cal. 508, 114 Pac. 835, Ann. Cas. 1912C, 969:

"But the validity of legislation which would be necessary or proper under a given state of facts does not depend upon the actual existence of the supposed facts. It is enough if the lawmaking body may rationally believe such facts to be established."

In the case of People v. Durston, 119 N. Y. 569, 24 N. E. 6, 7 L. R. A. 715, 16 Am. St. Rep. 859, it was said:

"If it cannot be made to appear that a law is in conflict with the Constitution, by argument deduced from the language of the law itself, or from matters of which a court can take judicial notice, then the act must stand."

It does not appear from the face of the act itself that the expenses allowed are excessive, nor does it appear from any matters of fact of which a court can take judicial notice. The Legislature had the power to investigate and determine these facts, and it has presumably done so.

In the case of State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402, the court, in speaking of legislative power and legislative discretion, said:

"It had the power; and must be presumed to have inquired into the actual conditions, * * * and the discretion exercised by them within their conceded powers we have no power to control, unless it involves a violation of some right protected by the Constitution."

[14] If, under any possible state of facts, the acts in question can be held to be constitutional, this court is bound to presume that such facts existed. As was well said by the Supreme Court of Iowa, in McGuire v. C., B. & Q. R. Co., 131 Iowa, 340, 108 N. W. 902, 33 L. R. A. (N. S.) 706:

"It is not for the court to inquire or determine whether a state of facts existed calling for the enactment of the legislation in question. That is for the exclusive consideration of the Legislature. If under any possible state of facts the act would be constitutional and valid, the court is bound to presume that such condition existed."

The Supreme Court of the United States, in the case of Calder v. People of Michigan, 218 U. S. 591, 31 Sup. Ct. 122, 54 L. Ed. 1163, in which the motives and purposes of the Legislature were attempted to be called in question, said:

"But we do not inquire into the knowledge, negligence, methods or motives of the Legislature if, as in this case, the repeal was passed in due form."

The question of whether or not the Legislature exceeded its powers in making an expense allowance to each of the Supreme Court judges of so great a sum as $150 per month is the only one in this proceeding which to us has ever seemed difficult or doubtful.

[15] If it be conceded that the Legislature may provide for the allowance of expenses in a lump sum of any amount, no matter how small, the next question is, Where can the line be drawn

by this court below which the Legislature in its discretion may go, but beyond which it cannot pass? Can such a line be drawn anywhere? We may and do concede that a so-called expense allowance might be so great that upon its face, without argument, it would furnish conclusive evidence that the Legislature did not and could not believe or intend that it was for expenses incurred or that might be incurred. To illustrate: If instead of $1,800 per year the Legislature had provided for $5,000 per year to each of the judges, we would have no hesitation in holding such a law unconstitutional. Perhaps in making an expense allowance of $1,800 per year the Legislature came dangerously close to the line beyond which this court might say it cannot pass. In this proceeding it is unnecessary to decide whether it did or not, and we do not attempt to do so. What we do decide is that we cannot take judicial knowledge of the fact, if it be a fact, that an expense allowance of $1,800 per year to each of the Supreme Court judges is so excessive that we could be justified in saying the Legislature in making such allowance acted in bad faith and in fact increased the salaries of the judges in violation of the state Constitution.

[16] The Legislature by making the allowance has, in effect, said it is not excessive. Whether it is or is not excessive cannot be proved as a fact by witnesses for the purpose of holding the law unconstitutional. It is not a matter of expert opinion. It is a matter to be estimated—a matter of judgment which belongs to the legislative branch of the government, and one with which courts cannot interfere unless it conclusively appears that the Legislature in making the allowance acted in bad faith.

[17] We cannot conclude beyond a reasonable doubt that chapter 400, Laws of 1921, violates any provision of the state Constitution, and where there is a reasonable doubt the law must stand. It may be thought by some that the framers of the Constitution and the people who adopted it should in that instrument have denied to the Legislature the right to provide for any expense allowance in a lump sum to any officer, either constitutional or statutory. It is now about 32 years since the state Constitution became operative, and conditions since 1889 have changed; many things may be considered advisable or necessary now that were not thought of at that time. It may now be believed that the habit or custom of providing for expenses in a lump sum is un-

wise and liable to abuse. No matter what the members of this court may think as to the wisdom of such legislation, it must be evident to all that it is not a judicial question; it is purely a question of policy with which courts are not concerned.

These conclusions necessarily require that the application for a writ of prohibition, in so far as it would deny to each of the Supreme Court judges his right to the expense allowance of $150 per month, should be denied; and it is so ordered.

## PART II.

ORVIS, J. The separate special proceeding designated Part II relates to an expense allowance of $50 per month to C. A. Burkhart, as Secretary of the state of South Dakota, W. S. O'Brien as Treasurer of said state, Fred L. Shaw as Superintendent of Public Instruction of said state, and N. E. Knight as Commissioner of School and Public Lands of said state, all of whom are interveners in said proceeding. The issues in this proceeding, as in Part I, relate to questions of constitutional law.

Section 7060 of the Revised Code of 1919, originally enacted as chapter 365 of the Laws of 1917, is as follows:

That "whenever a Secretary of State, State Auditor, State Treasurer, Superintendent of Public Instruction or Commissioner of School and Public Lands, whose legal residence shall be at some place other than the state capital, shall have changed his place of actual residence to the capital, there shall be paid to such officer, in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence and the expenses of traveling to and from such legal residence, the fixed sum of fifty. dollars for each month, payable upon the certified vouchers of such officers, filed in the office of the State Auditor."

By sections 6, 22, 24, and 27 of chapter 21 of the Session Laws of 1921, the Legislature appropriated money sufficient to pay to each of the intervening state officers the sum authorized by said section 7060, Revised Code of 1919. It is contended by the Attorney General and his assistant that said section 7060 is in violation of article 21, § 2, of the state Constitution, which is as follows:

"The Secretary of State, State Treasurer and State Auditor shall each receive an annual salary of $1,800; the Commissioner

of School and Public Lands shall receive an annual salary of
$1,800; the Superintendent of Public Instruction shall receive an
annual salary of $1,800; * * * they shall receive no fees or per-
quisites whatever for the performance of any duties connected
with their offices. It shall not be competent for the Legislature
to increase the salaries of the officers named in this article except
as herein provided."

By article 4, § 12, of the state Constitution, it is provided
that the officers above named shall respectively keep their offices
at the seat of government.

[1] It is conceded that each and all of said officers, in order
properly and efficiently to conduct their offices, have taken up their
actual residence in the city of Pierre, although prior to their as-
suming their official duties as said officers each and all of them
resided in other cities and parts of the state of South Dakota,
and that each and all of said officers voluntarily changed their
places of actual residence to the capital of the state of South Da-
kota. Said officers are not required to reside at the state capital
by any law, constitutional or statutory; they are simply required,
under the Constitution, to keep their offices at the seat of govern-
ment.

It was within the legislative power to provide as it did, in
1917, by the enactment of the statute hereinbefore referred to, for
the expenses of the intervening constitutional state officers a
lump sum, provided the sum allowed did not exceed the actual
expenses which it was designed to cover.

Nearly every reason given for sustaining a lump allowance
to the Supreme Court judges in Part I of this opinion applies with
equal force to the intervening state officers. The fact that these
officers are required to keep their offices at the seat of govern-
ment, while the judges of the Supreme Court are only required
by the Constitution to hold at least two terms of the Supreme
Court at the seat of government each year, cannot be construed
as preventing the Legislature from allowing to the intervening
state officers the right to such expenses as they would necessarily
incur had they retained their actual places of residence where they
resided when elected to the offices which they now hold, and had
they made frequent trips to and from the state capital.

[2] For reasons given in Part I of this opinion, we cannot

escape the conclusion that section 7060, Revised Code of 1919, is a valid legislative enactment, and that the writ of prohibition applied for, in so far as it would affect the rights of the constitutional state officers who are interveners herein to each receive the sum of $50 per month, should be denied; and it is so ordered.

## PART III.

ORVIS, J.    Part III of plaintiff's petition relates to an expense allowance to each of the circuit court judges of this state of $75 per month.    It is contended by the Attorney General and his assistant that chapter 159, Session Laws of 1919, is unconstitutional.    Said statute is as follows:

"In consideration of paying the traveling expenses, hotel bills, telephone expenses, furnishing stationery, office supplies and other expenses of circuit court judges in the state of South Dakota while performing the duties of their office, there shall be paid to each judge of the circuit court in the state of South Dakota the fixed sum of $75 for each month, payable upon certified vouchers of such judge filed in the office of the State Auditor."

By section 7, c. 21, Session Laws of 1921, an appropriation sufficient for the payment of the expenses provided for in said statute was made by the state Legislature.    The only provisions of the Constitution which it is contended chapter 159, Session Laws of 1919, contravenes, are article 21, § 2, and article 5, § 30; both of which, so far as material, are quoted in Part I of this opinion.    The issues for trial all relate to questions of constitutional law.

Nearly all that has been said in Part I of this opinion is with equal force applicable to the issues relating to the circuit court judges.

There are certain facts in this proceeding of which the court takes judicial notice, different from those considered in Parts I and II of this opinion.    There are a number of counties included in and constituting the circuit of each of the circuit court judges, and it is necessary for them to hold terms of court at the county seat of each of said counties.    It is necessary in the discharge of their duties that they should go about from county to county and be absent from their homes much of the time.    In performing such duties they necessarily incur expenses for traveling, hotel bills, telephone bills, stationery, office supplies, and other expenses

incident to the discharge of their official duties. These expenses cannot be avoided. Was it not the plain duty of the Legislature to provide an allowance to each of the circuit court judges sufficient to pay said expenses?

This court will take judicial notice of the fact that all expenses necessarily incurred by circuit court judges in the performance of their official duties are very much greater than they were at the time of the adoption of the state Constitution. The salaries allowed the circuit court judges are so inadequate ($2,500 each per year) that the Legislature presumably regarded it as a duty to make an allowance to each of the circuit court judges for such expenses as they must necessarily incur in performing their official duties.

It is contended by the circuit court judges that the amount allowed for expenses by the Legislature is not, in fact, adequate to reimburse them for their actual necessary expenditures in discharging the duties of their said office. Plaintiff's contention is that it is immaterial, even if true, because, as contended, the Legislature is without power to make and expense allowance in a lump sum to any state officer.

[2] We do not think it of any importance in this proceeding whether or not the expense allowance of $75 per month to each of the circuit court judges is inadequate to reimburse those officers for their actual necessary expenditures in discharging the duties of their office. For reasons given in Part I of this opinion we are convinced that it was within the power of the Legislature to allow expenses in a lump sum to each of the circuit court judges, that the amount of such allowance was for the determination of the Legislature, and that courts cannot, under any sound principle of law, substitute their judgment for that of the Legislature, or interfere with purely legislative acts, unless the amount allowed is so plainly and palpably in excess of any amount that could be incurred by the circuit court judges as to show upon its face, without argument, that the Legislature did not and could not have intended the amount allowed simply for expenses.

It is unnecessary here to repeat the reasons for our conclusions; they are stated at considerable length in Part I of this opinion. These conclusions necessarily require that the application for the writ of prohibition, in so far as it was intended to

affect the rights of each of the several circuit court judges to receive $75 per month as an expense allowance, under chapter 159, Session Laws of 1919, should be, and the same is, denied.

## PART IV.

NULL, J.    In Part IV plaintiff in his petition alleges:

"That section 13 of chapter 21 of the Laws of 1921, being the general appropriation act, appropriates and sets aside the sum of eighteen thousand and four hundred ($18,400) dollars for the biennial period, beginning July 1, 1921, and terminating June 30, 1923, for salary of private secretary to the Governor, clerk hire, stenographers, stationery, office supplies, postage, railroad fare, rent, and living expenses, and other traveling expenses and incidentals."

"That heretofore vouchers, duly approved by the Governor, for the amount of seventy-five ($75) dollars per month, for rent of living rooms at the St. Charles Hotel, situate in Pierre (the capital), S. D. for the Governor and his family, have been honored by the defendant (State Auditor) herein, and warrants issued upon funds appropriated by section 2, c. 15, of the Session Laws of 1919, which funds were appropriated for rent, living, and other expenses of the Governor of the state."

"That the appropriation of public funds for the rental of living rooms or a dwelling for the Governor of the state, and the payment thereof by the State Auditor, is without authority of law and is in violation of section 2, art. 21 of the state Constitution. That the salary of the Governor is fixed at three thousand ($3,000) dollars per year by the provisions of section 5318 of the South Dakota Revised Code of 1919, the maximum amount authorized and permitted by the provisions of said section 2, art. 21, of the state Constitution.    That said allowance of seventy-five ($75) dollars per month for hotel rent of living rooms for the Governor of the state is a grant of a fee, perquisite, or emolument in violation of said constitutional provision, and is, in effect, an additional allowance or salary of nine hundred ($900) dollars per year paid to the Governor in excess of the salary authorized by the state Constitution."

Then follow appropriate, allegations to the effect that the defendant, State Auditor, is about to issue warrants against the appropriation for the current biennial period in payment of

vouchers approved by the Governor for rent of living rooms at the St. Charles Hotel.

To this petition the defendant, State Auditor, demurs on the grounds that said petition does not state facts sufficient to constitute a cause of action. Subsequent to the filing of the petition the Hon. William H. McMaster, as Governor of the state of South Dakota, was permitted to intervene, and he presented a return or answer to the petition in which he alleges that the petition does not state facts sufficient to constitute a cause of action, and—

"That the duties of your intervener as Governor of the state of South Dakota require his actual residence in the city of Pierre, S. D., where the capitol of said state is located, and that prior to his assuming his duties as Governor of said state, resided in the city of Yankton, Yankton county, S. D., and that the duties incident to his said office require him to change his actual residence to the said city of Pierre."

The issues thus framed present the sole question: Is the act of the Legislature appropriating money to pay rent for rooms occupied by the Governor at the hotel in Pierre unconstitutional?

In the general appropriation bill passed at the 1911 session of the Legislature, the paragraph relating to expenses of the Governor read as follows:

"For salary of private secretary, clerk hire, stenographer, stationery, office supplies, postage, railroad fare, hotel expenses and other traveling expense and incidentals $5,300." Laws 1911, c. 82, § 3.

In the 1913 appropriation bill the words "rent" and "living" were inserted between the words "hotel" and the word "expenses," so that the paragraph reads:

"For salary of private secretary, clerk hire, stenographer, stationery, office supplies, postage, railroad fare, hotel and living expenses, rent and other traveling expenses and incidentals $6,000." Laws 1913, c. 23, § 3.

From 1913 down to the session of 1921, the form of the paragraph has remained substantially the same. Since 1913 there have been four general elections, at which members of the Legislature have been elected.

With these facts before us we take up the question presented.

Section 2, art. 21, of the Constitution, reads as follows:

"The Governor shall receive an annual salary of two thousand five hundred dollars; the judges of the Supreme Court shall each receive an annual salary of two thousand five hundred dollars; the judges of the circuit court shall each receive an annual salary of two thousand dollars: Provided, that the Legislature may, after the year one thousand eight hundred and ninety, increase the annual salary of the Governor and each of the judges of the Supreme Court to three thousand dollars, and the annual salary of each of the circuit court judges to two thousand five hundred dollars. The Secretary of State, State Treasurer and State Auditor shall each receive an annual salary of one thousand eight hundred dollars; the Commissioner of School and Public Lands shall receive an annual salary of one thousand eight hundred dollars; the Superintendent of Public Instruction shall receive an annual salary of one thousand eight hundred dollars; the Attorney General shall receive an annual salary of one thousand dollars; the compensation of the Lieutenant Governor shall be double the compensation of the state Senator. They shall receive no fees or perquisites whatever for the performance of any duties connected with their offices. It shall not be competent for the Legislature to increase the salaries of the officers named in this article except as herein provided."

By chapter 110, Session Laws of 1901, the salaries of the Governor and judges were increased to the maximum amount provided for in the above-quoted section of the Constitution.

Section 1, art. 3, of the Constitution, declares that—

"The legislative power of the state shall be vested in a Legislature which shall consist of a Senate and House of Representatives," except that certain provisions are made for the initiative and referendum.

[1] There is no provision in the Constitution giving the judiciary supervisory power or control over the Legislature, so that so long as an act of the Legislature does not contravene some express provision of the Constitution, no matter how inconsiderate, illogical, or shocking such act may be, the judiciary of the state is powerless to interfere.

That the appropriation of money for the payment of the expenses incurred by state officials is the exercise of the legis-

lative power is so well settled and commonly understood as not to be open to discussion. The appropriation to pay such expenses being the exercise of the legislative power, then the proposition must necessarily follow that the Legislature is vested with a discretion as to what expenses it will or will not provide funds for the payment of. This decision of the Legislature is final. If the Legislature fails to make reasonable provision for official expenses, the officers are without remedy, as the judiciary has no power of either appropriating public funds directly or of coercing the Legislature to make such appropriation.

On the other hand, when the Legislature makes lavish and extravagant allowances, the court is equally powerless to correct the error.

In the absence of constitutional limitations, inherent plenary power is vested in the Legislature in all legislative and political matters. Stephens v. Jones, 24 S. D. 97, 123 N. W. 705; State v. Central Lumber Co., 24 S. D. 136, 123 N. W. 504, 42 L. R. A. (N. S.) 804; A. M. Linseed Oil Co. v. Wheaton, 25 S. D. 60, 125 N. W. 127, 41 L. R. A. (N. S.) 149; Ohlwine v. Bushnell, 32 S. D. 426, 143 N. W. 362; State v. Brown, 40 S. D. 372, 167 N. W. 400; In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321.

[2, 3] This brings us to the question: Is there an express (or necessarily implied) prohibition in the Constitution against the appropriation by the Legislature of public funds for the payment of the rent for rooms occupied by the Governor at the hotel?

It will be noticed that the Governor actually occupies such rooms, and that the money is paid directly to the proprietors of the hotel on proper vouchers certified by the Governor. This case is to be distinguished from a case where a certain sum is appropriated to be paid the official whether he actually incurs the expense or not.

As we understand the argument of the Attorney General, it is that the payment of the room rental at the hotel is the payment of the personal and private expenses of the Governor, and therefore operates to increase his salary in contravention of that clause of the Constitution (article 21, § 2), which provides:

"It shall not be competent for the Legislature to increase the

salaries of the officers named in this article except as herein provided."

The court cannot presume that the Legislature intended to violate the Constitution; hence we cannot presume that this appropriation was intended by the Legislature as an increase of the Governor's salary.  As a co-ordinate branch of 'the government, the court is bound to give full faith and credit to the act of the Legislature, and is bound to assume that the Legislature simply intended to pay an item of expense which, in its judgment, was a proper item of expense to be paid from the funds of the' state.

Let us see what the facts are:  The Governor, at the time of his election, resided at the city of Yankton.  There is no law requiring him to reside at the capital.  The Governor could have continued his residence at Yankton and traveled back and forth between Yankton and Pierre and lodged at a hotel while in Pierre. His expenses incurred in such travel and lodging would certainly have been legitimate expenses to be paid by the state as expenses incurred incident to and in performance of his duties as Governor.

Now to avoid waste of time in travel and the expense incident to such travel, it is deemed expedient to have the Governor reside at the capital.  To do this he must maintain a place of residence at Pierre in addition to his home in Yankton.  The Governor does not derive any profit from the rooms occupied by him; on the contrary, the rooms are an additional expense incurred by him incident to the performance of his official duties.

There is no contention here that the $3,000 salary allowed the Governor was to be in full payment for both his services and expenses; hence an allowance for expenses, properly payable by the state, does not operate to increase the constitutional salary of the Governor.

[4]  The prohibition against increasing salaries of public officers was not intended as a limitation upon legislative authority to provide for the expenses of such officers.  The fallacy of such a contention is apparent when we consider that in many cases the expenses of the officer exceed his constitutional salary.

That the allowance of expenses does not operate as an increase of salary is sustained by the following authorities:  State v. Thomason, 142 Tenn. 527, 221 S. W. 491; Throop on Public Officers, 442; 29 Cyc. 1427, 1429; Briscoe v. Clark Co., 95 Ill.

309, 311; State v. Atherton, 19 Nev. 332, 10 Pac. 901, 910; Kirkwood v. Soto, 87 Cal. 394, 25 Pac. 488; Newman v. Lester, 11 Cal. App. 577, 105 Pac. 785; People ex rel. Follett v. Fitch, 145 N. Y. 261, 39 N. E. 972; State v. Sheldon, 78 Neb. 552, 111 N. W. 372; Ware v. Battle Creek, 201 Mich. 468, 167 N. W. 891, L. R. A. 1918E, 673; McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858, 872, Ann. Cas. 1917A, 1046; Milwaukee County v. Halsey, 149 Wis. 82-85, 136 N. W. 139; Russ v. Commonwealth, 210 Pa. 544, 60 Atl. 169, 1 L. R. A. (N. S.) 409, 105 Am. St. Rep. 825.

[5]  The rule of law is well settled that the power of the court to declare an act of the Legislature unconstitutional is an. extraordinary power, and should only be exercised in a case free from all reasonable doubt. State v. Becker, 3 S. D. 29, 51 N. W. 1018; Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147; In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321; Insurance Co. v. Basford, 27 S. D. 164, 130 N. W. 44; McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046.

We cannot say that the appropriation to pay the rent for rooms occupied by the Governor at the hotel is, beyond a reasonable doubt, within the constitutional prohibition, and therefore the writ so far as Part IV is concerned, should be denied.

HAYES, P. J., dissents.

## PART V.

N|ULL, J.  In Part V of the petition it is alleged that by chapter 84, Session Laws of 1920, the State Capital Commission was authorized and directed to prepare plans for a Governor's home, to secure grounds by purchase or condemnation for a site for such home, and to prepare the grounds for building, and to present plans for the completed building and improvements at the next regular session of the Legislature.  For this purpose the Capitol Commission shall use funds placed at its disposal by Chapter 322, Laws of 1919; that the Capitol Commission has acquired certain lands to be used as a site for a Governor's home and is now negotiating, and will acquire by purchase or condemnation, certain other lands to enlarge and complete the site upon which it is intended that a Governor's home shall be erected; that certain vouchers have been or are about to be pre-

sented to the State Auditor for the services of a landscape archi-
tect in surveying said site, preparing and drafting plans, and
doing other detail work connected with such survey.

It is then alleged that said chapter 84, Laws of 1920, is con-
trary to and in violation of the state Constitution. It is claimed
that the purchase of a site for a Governor's dwelling is in viola-
tion of section 2, art. 11, of the Constitution, which provides that
taxes "shall be levied and collected for public purposes only;"
that the furnishing of a residence for the Governor is the use of
public funds for a private purpose.

[1] In Part IV of this opinion we have discussed the valid-
ity of the appropriation for rents paid for rooms occupied by the
Governor at the hotel. We reached the conclusion that such ap-
propriation was legal and valid. All that we said on that branch
of the case applies with equal force here. If the Legislature may
provide rooms for the Governor at a hotel, then why not acquire
a dwelling to be used as a Governor's dwelling?

[2] The acquiring and maintaining of public buildings is the
exercise of purely legislative powers, with which the court has no
concern. The Constitution does not prescribe what public build-
ings shall be provided, or the uses to which public buildings may
be put. This lack of constitutional limitation or restriction leaves
the whole subject entirely with the Legislature. Under these cir-
cumstances, when the Legislature, in the exercise of its discretion,
provides for a public building for a public purpose, its decision is
final and not subject to review by the courts.

[3] This leads us to the sole question in this case, i. e.: Is
an official residence for the chief executive a public building de-
voted to a public purpose? In deciding this question we must
consider the history and practice of governments such as ours.
The United States has its White House and many of the states
have their executive mansions.

The Supreme Court of Nebraska, in State v. Sheldon, 78
Neb. 552, 111 N. W. 372, in a similar case, said:

"The custom of furnishing an official residence for the chief
executive officer of the government has been in force for very
many years in representative governments such as ours. It is a
matter of common knowledge that Great Britian provides an
official residence for its Prime Minister, and, in fact, the practice

is so well established and has been continued for so long a time that the name of the street in which the official residence is situated is often used as synonymous with the administration, and 'Downing Street' conveys an idea to a British subject as clear and well defined as the name of the 'White House' does to an American citizen. This practice was followed upon the formation of the United States, and many of the states of the Union, recognizing the added dignity given to the office and other advantages to be derived from the residence of the chief executive officer being certain in location and convenient of access at all times, have provided official residences for the use of the Governor of the state. Some of the states so providing a residence have similar restrictions in their Constitution as exist in that of this state with regard to the acceptance of perquisites. Of course, this goes merely to show the meaning applied to such provisions by the respective Legislatures. It cannot be questioned that the Legislature had the power, the right, and the authority to purchase the property and to provide for its occupancy by the Governor. This was done in the exercise of its proper powers in behalf of what is deemed to be the public welfare, and its acts in that regard are not subject to review by any other department of the state government. There is no question, then, of legislative power involved."

While the question of the propriety of providing an official residence for the chief executive is a legislative and not a legal question, yet the reasoning of the Nebraska court appeals strongly to our judgment.

The court said:

"It may be doubted whether the occupancy of this mansion does not impose upon the Governor larger expenditures than those which would be exacted from him by the occupancy of a more humble abode for which he paid the usual rent, and, in place of being an additional reward or compensation, it may in fact be, and probably is, an additional drain upon his recources. We agree with the Legislature that it is entirely in keeping with the proper administration of the government of the state, with due regard to the dignity of that high office, that the Governor be provided with an official residence, and that his occupancy of the same, required by law, is in no sense a perquisite of office or of the nature of additional compensation."

An examination of the legislation on this subject shows that our Legislature is proceeding with deliberation and care. It first provided for acquiring suitable land; it then provided for plans to be submitted to the next Legislature. It has not given the Capitol Commission carte blanche to spend the public money, but has kept the control of such expenditures in its own hands.

The expenditure being for a public building for a public purpose and authorized by the department of the state government having sole control of such matters, this court is without power to interfere, and therefore the writ, so far as Part V is concerned, is denied.

HAYES, P. J. (dissenting.)   By section 30 of article 5 of the state Constitution, declaring that a judge shall receive no compensation, perquisite, or emolument for or on account of his office in any form whatever, and of section 2 of article 21, limiting salaries of judicial and certain executive officers to fixed amounts, and providing that such officials shall receive no fees or perquisite whatever for the performance of any duties connected with their offices, and that it shall not be competent for the Legislature to increase the salaries of such officers, the people in their fundamental law, binding alike upon courts, executive officers, and legislators, have drastically limited these compensations.   Both the letter and spirit of these provisions forbid additional reward in any form whatever.   These sections, by common consent and by legislative and judicial acquiescence, for over 20 years were held to have prevented payment of even necessary official expense.   The people of this state, at the biennial elections in recent years, have been repeatedly asked to so amend these constitutional provisions that salaries in some manner adequate to the duties performed may be paid, but have steadfastly refused. The spirit as well as the letter of a controlling constitutional provision must be obeyed.   Courts, however reluctant to hold void a law enacted by the representatives of the people, such as chapter 400 of the Laws of 1921, have no alternative when a choice must be made between such a law and a constitutional provision.   The Attorney General, for plaintiff, on the oral argument conceded to the lawmaking power the right to pay the official expenses of these public officers, i. e., expenses necessarily connected with the discharge of their official duties, but denied the right to appro-

39—Vol. 44, S. D.

priate public moneys for private expenses. Household expenses, living expenses, whether increased or diminished and regardless of where an official may elect to reside, are in their nature private, individual. These are the personal burdens on every man's shoulders. Payment directly or indirectly of a dollar thereon constitutes compensation, perquisite, or emolument additional to a prescribed salary. This act, being in the main for an unconstitutional purpose, that is, the payment of increased expenses of living at a place other than the legal residence of a judge of the Supreme Court, must wholly fail.

In the majority opinion it is said that the Constitution of the state does not contain any restrictions upon the power of the Legislature to make allowance for the expenses of the several constitutional state officers who are interveners in this proceeding. The Constitution (section 2, art. 21) does provide that it shall not be competent for the Legislature to increase the salaries of these officers. The Legislature, thus limited, certainly may not go beyond payment of the actual official expense. Payment to or for an officer of public funds in excess of such expenses, or for private or personal use, is an increase of salary and clearly forbidden. It is too patent to be denied that this *"expense"* law owes its origin to the fact that these salaries, fixed 32 years ago, are now unfair and wholly disproportionate to the duties and the conditions under which they must be performed. The remedy for this wrong and injustice lies, however, not with the Legislature or the courts, but with the people.

It is said that the members of the Supreme Court, if they had continued to reside at the place of their legal residence, might have been allowed expenses of travel to and from the seat of government and living expenses while there, as official expenses. Even if this were true, the fact that these judicial officers for years past have elected to live at Pierre and are permanently domiciled there precludes the possibility of classifying their living expenses, or part thereof, as in any sense *"official."* The personal character of living expenses is the same in Deadwood, Aberdeen, or Pierre, and is not affected by mere change of location.

The Supreme Court of this state, in the case of McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046, sustained a law similar in terms to chapter 400

of the Laws of 1921, awarding to the judges of that court $50 per month for. these expenses. The majority, opinion here cites Smith v. Jackson, 241 Fed. 749, 154 C. C. A. 449, as supporting the same. In the federal case the sole question was as to the authority of the auditor of the Panama Canal, without law or departmental regulation, to deduct from the salary of a federal judge rent for use of a house in the Canal Zone, not a question such as is involved here.

In State v. Thomason, 142 Tenn. 527, 221 S. W. 492, also. cited as supporting McCoy v. Handlin Case, supra, the expenses provided for were "for stenographer work and other necessary expenses"—presumably expenses incident to the performance of official duty.

In Macon County v. Williams (Mo.) 224 S. W. 835, it was held that $1,200 in lump sum, per annum, which the Legislature had allowed a circuit judge to cover his expenses, was not paid as compensation. The questions involved in McCoy v. Handlin and the instant case were not before the Missouri court.

The compensation of $3,000 per annum provided for by section 2, art. 21, is intended to cover the services of a member of the court and such personal expenses as may be connected therewith. Section 4 of article 5 directs that two terms of the Supreme Court shall be held each year at the seat of government. Chapter 400, Laws of 1921, allowing each member $150 a month as expenses of removing to the state capital, additional living expenses there, and expenses of travel to and from his legal residence, constitutes additional compensation, and is in conflict with section 30, art. 5, of the state Constitution, prohibiting any compensation, perquisite, or emolument for or on account of his office, in any form whatever, except the salary fixed. Leekenby v. Post Printing Co., 65 Colo. 443, 176 Pac. 490; Terrell v. Middleton (Tex. Civ. App.) 187 S. W. 367; Bailey v. Kelly, 70 Kan. 869, 79 Pac. 735; State ex rel. Fox v. Raine, 49 Ohio St. 580, 31 N. E. 741; Cullom v. Dolloff, 94 Ill. 330; People ex rel. Bolton v. Albertson, 55 N. Y. 50.

Attention of this court has not been called to an authority of any other state sustaining the payment of the living expenses of a public officer at the place at which he resides, or is called upon to perform his general official duties.

The effect of this enactment is to increase the compensation of the Supreme Court judges from $3,000 to $4,800 annually, and permit them to pay certain personal expenses themselves. The fact that the compensation probably should be $7,500 per annum instead of $3,000 cannot affect the legal situation or validate this act.

The Constitution (article 4, § 12) requires that state officials perform their duties at the seat of government. The compensation, limited to $1,800 per annum, is intended to cover their official services and personal expenses connected therewith. The act awarding $50 per month as expenses of removal to the capital, the increased expense of living at a place other than his legal residence, and the expense of traveling to and from such legal residence, awards additional compensation and is in conflict with section 2 of article 21 of the state Constitution. These defined expenses are not public, not official, not connected with the performance of official duties, but of a purely personal and individual character.

The payment of $900 per annum in a lump sum for expenses of circuit judges violates the constitutional salary limitations. The Legislature may pay circuit judges only the actual expenses necessarily incurred in the discharge of the duties of their office. If this statute is upheld, circuit judges will receive an annual salary not of $2,500, as provided by the Constitution, but $3,400, with the personal obligation of paying their own expenses. So far as the state is concerned the payment of $3,400 is absolute, and the payment of expenses incurred a matter solely within the discretion of the incumbent of the judicial office.