BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1916.

METROPOLITAN PAVING COMPANY, Respondent,
v. GIRARD INVESTMENT COMPANY, Appellant.

Kansas City Court of Appeals, November 6, 1916.

This is a suit on a special tax bill issued by the city of St. Joseph for paving Penn street between Sixteenth and Twenty-Sixth streets. The proceedings for the paving of Penn street were regular up to the receiving of the bids on October 25, 1912. The ordinance passed by the city council contained a provision for the completion of the work 120 days after the awarding of the contract. One bid was received but the contract was not awarded until seven months had elapsed. *Held*, that the trial judge erred in not rendering judgment for the defendant, for the reasons that such delay in awarding the contract would be destructive of real competitive bidding and open the door to fraud and favoritism.

Appeal from Buchanan Circuit Court.—*Hon. Chas. H. Mayer,* Judge.

REVERSED.

*C. F. Strop, Graham & Silverman* and *Ben. J. Woodson* for appellant.

*W. B. Norris* for respondent.

JOHNSON, J.—This is a suit on a special taxbill of a series issued by the city of St. Joseph for the paving of Penn street between Sixteenth and Twenty-sixth

(661)

streets. A trial without the aid of a jury resulted in a judgment for plaintiff, the owner of the taxbill, and the cause is here on the appeal of defendant.

The proceedings for the paving of the street were inaugurated at a meeting of the Board of Public Works held on July 12, 1912, and resulted in the preparation and submission to the Council of an ordinance for paving the street with an asphaltic concrete pavement in accordance with plans and specifications prepared and filed by the city engineer. This ordinance, known as No. 6193, was passed by the Council and approved by the Mayor October 7, 1912, and it contained the provision "said work to be completed within one hundred and twenty days after the contract shall be awarded, provided that the time fixed for the completion hereof shall be extended for such length of time as the contractor may be actually and necessarily prevented from pursuing said work by reason of bad weather, etc." On October 12, 1912, the Board of Public Works published a notice to contractors inviting them to bid on the work stating, among other things: "Proposals for the above work will be received until eleven o'clock a. m., Friday, Oct. 25, 1912, and will be opened and read at the office of the Board of Public Works. Specifications, contracts, blank forms and any other information relative to the above work may be had in the Engineering Department of the Board of Public Works. The right to reject any and all proposals is reserved."

The Board met at the time stated in the notice, opened the bid of plaintiff who was the only bidder and then entered of record the following order:

"On motion action was deferred in awarding the contract for paving and otherwise improving Penn street from Sixteenth to Twenty-sixth street as provided for by Special Ordinance number 6193, approved October 7, 1912."

All further proceedings were suspended until May 14, 1913, when the Board met and awarded the contract to plaintiff on the bid filed and opened on October 25th. Ten days later the contract "was entered into" between

plaintiff and the Board and the order of the Board recited that the work should be completed within one hundred and twenty days from that date. It appears from the testimony of members of the Board who were introduced as witnesses by plaintiff that plaintiff was a reliable and responsible contractor and so regarded by the Board and that the reasons of the Board for deferring action in awarding the contract were that the plaintiff who was the only bidder upon a number of street improvements for which the Board had advertised for bids at, or near, the time of the advertisement in the present case, would not be able to prosecute the work on all at the same time; that plaintiff would not be able to complete the paving of Penn street without interruption by cold weather and that it was desirable that such interruption be avoided. One member testified: "If we thought a contractor couldn't get through with the work we would defer action on it and award the contract when we thought the weather would permit going ahead with the work. . . . "Q. But in a case like this, where the bid was all right, and it was just a question of the approaching weather, as you have testified, was it not your custom, the custom of the Board of Public Works, to award the contract unless the contractor requested you not to? A. Certainly we would award the contract if he wanted it; if not, defer action."

Another member said: "Q. When ordinances were passed, became effective in the Fall of the year, what was the general policy of the Board of Public Works of the city of St. Joseph, Missouri, in letting the contracts under those ordinances in the Fall of the year, did you let them then, or pass them until Spring so the work could begin in the Spring: A. We generally passed them until Spring, for several reasons: Because, in the first place, if a contractor has to apply for an extension of time he sacrifices five per cent of the contract price. We thought it was the duty of the Board of Public Works to protect the contractor in that respect, you know. We did the same with sewer contracts, and so forth.

"Q. Why did you do that? A. We did it because we thought the conditions would probably not be in proper shape, and that they would have everything ready to start in the Spring."

It is argued by defendant that the delay of seven months in awarding the contract, after the bid had been received and the opportunity to other contractors to bid had been closed, constituted an abandonment of the proceeding and was a character of proceeding which, if allowed to be continued by the Board would, or might, tend to open the door to fraud and favoritism, "that such action had the effect of giving respondent seven months in addition to the one hundred and twenty days provided in the contract for the performance of the work, enabling him to gather his materials, organize his force and prepare for the doing of the work which advantages were denied to other prospective bidders and were not disclosed in the notice to contractors."

In support of this argument we are cited to our decision in Marshall to use, v. Wisdom, 127 Mo. App. 640. In that case, as in this, the initiatory ordinance in prescribing a time for the completion of the work made time of the essence of the proceeding and vitally differentiated the case from that of Jaicks v. Middlesex Investment Co., 201 Mo. 111, where the ordinance failed to fix a time for the completion of the work. We held in the Wisdom case, and perceive no reason for altering that view, that where property-owners and contractors are notified by the ordinance that time is essential they are assured, in effect, that the proceedings will be conducted to the point of the execution of the contract, without unusual delay and with the usual expedition of a man who is in a hurry to have his work done and expresses such haste in the terms of his proposal to bidders. That the ordinance in the instant case was intended to convey the assurance that the contract would be awarded and entered into without unusual delay and that the work would be expected to be done during the winter months is manifested not only by the provision fixing a time for the completion of the paving, but also by the inclusion of a stipulation for

an extension of time to cover delays in the prosecution of the work caused by bad weather.

There is no suggestion in the wording of the ordinance and notice to contractors that by means of the expedient of postponing the awarding of the contract after the closing of all opportunity to others to bid, the period for doing the work would be stretched from one hundred and twenty days to eleven months and the successful bidder be given all the advantages which might accrue from such enlargement, particularly the advantage of escaping the retarding and expensive obstructions of winter weather.

The only difference in fact between this case and the Wisdom case is that in the latter the city awarded the contract and then delayed entering into it, while here, the awarding of the contract was deferred. But this is a distinction without a substantial difference in practical results. In either case the practice pursued is one that easily might be perverted to the advantage of a favored contractor and the destruction of real competitive bidding. Paraphrasing what we said in the Wisdom case, it is but fair to presume that if bidders had known that instead of one hundred and twenty days in which to complete the work, they would have almost a year, other and lower bids would have been filed. If we should tolerate the suggestion that the city officers may delay arbitrarily the awarding of the contract without readvertising for bids in cases where they have made time of the very essence of the proceeding, we would give sanction to a rule which not only might be destructive of real competition, but would open the door to fraud and favoritism. The city officers will not be allowed to place themselves in a position where they may say to a favorite contractor: "You may choose your own time and season to do this work," and say to all others, "You must do it within a specified time and under disadvantageous conditions."

The learned trial judge erred in not rendering judgment for defendant and it follows that the judgment for plaintiff should be reversed. It is so ordered.

All concur.