[No. 35735. *En Banc.* December 22, 1960.]

WILLIAM H. DAVIS, *Appellant,* v. WASHINGTON TOLL BRIDGE AUTHORITY *et al., Respondents.*[1]

[1]Reported in 357 P. (2d) 710.

*Alfred J. Schweppe*, for appellant.

*The Attorney General, Delbert W. Johnson* and *Stanton P. Sender, Assistants, Weter, Roberts & Shefelman* and *Harold S. Shefelman, Special Assistants,* and *John S. Robinson,* for respondents.

*Bogle, Bogle & Gates, Edward G. Dobrin,* and *Robert W. Graham,* for respondent Guy F. Atkinson Company.

HUNTER, J.—The plaintiff, William H. Davis, appeals from a judgment dismissing his complaint after a trial on the merits to the court without a jury, in an action brought as a taxpayer and as a holder of one State of Washington Toll Bridge Authority Second Lake Washington Toll Bridge Revenue Bond, for a declaratory judgment declaring that a certain bid of Guy F. Atkinson Company and any contract awarded and entered into thereon is "illegal and void," and for an order permanently enjoining the defendants, the Washington Toll Bridge Authority, the Washington State

Highway Comminsion, the Director of Highways, and Guy F. Atkinson Company, from permitting the commencement of any performance under the contract.

The judge made findings of facts in which an "Agreed Stipulation as to Facts" and all the exhibits admitted into evidence were incorporated by reference, the substance of which, so far as they are material to this appeal, is as follows.

By publication of a notice dated February 10, 1959, a call for bids was made for construction of the second Lake Washington bridge, Unit I—the floating structure. The eight bids received were opened on March 24, 1959, revealing the Guy F. Atkinson Company's bid was lowest. Adhering to the ninety-day hold clause in the call for bids, the State Highway Commission did not award the contract on that day.

A few days later, the legislature enacted the Supplemental Appropriations Act, Laws of 1959, Ex. Ses., chapter 11, p. 1700, which purported to authorize the State Highway Commission to pledge money from the Motor Vehicle Fund to guarantee payment of principal and interest on any revenue bonds issued to finance construction of a second Lake Washington toll bridge. By resolutions, the Toll Bridge Authority requested and the Highway Commission pledged Motor Vehicle Fund money in accordance with Laws of 1959, Ex. Ses., chapter 11, p. 1700. Thereupon, the Toll Bridge Authority passed a resolution which provided for the issuance and sale of State of Washington Toll Bridge Authority Second Lake Washington Toll Bridge Revenue Bonds to finance the construction of the bridge and repay to the Motor Vehicle Fund the money pledged as a loan to the Toll Bridge Authority.

The State Auditor, Cliff Yelle, refused to sign and execute any of these bonds upon the ground that part of chapter 11, Laws of 1959, Ex. Ses., was unconstitutional. On May 5, 1959, the Toll Bridge Authority applied to this court for a writ of mandamus to compel the State Auditor to sign the bonds. This writ was denied on July 31, 1959, in *State*

*ex rel. Washington Toll Bridge Authority v. Yelle,* 54 Wn. (2d) 545, 342 P. (2d) 588.

Because the ninety-day "hold" period was about to expire, the Director of Highways requested, on June 19, 1959, an extension of time to award the contract for an additional sixty days. This request was granted three days later by the Guy F. Atkinson Company. On August 19, 1959, the Toll Bridge Authority requested an additional sixty-day extension of time for the award of the contract, and this was granted by the Guy F. Atkinson Company the following day. Another sixty-day extension, requested by the Toll Bridge Authority, was granted on October 9, 1959.

In accordance with RCW 47.56.250, the Toll Bridge Authority requested, on November 9, 1959, a pledge of money from the King county commissioners to guarantee payment of principal and interest on the bonds. RCW 47.56.250 provides:

". . . Any such city, county, or other political subdivision may, . . . at the request of the commission or the authority advance or contribute money or bonds for the purpose of guaranteeing the payment of interest or principal on the bonds issued by the authority to finance the toll facility. . . ."

On the same day, the King county commissioners, after adopting an appropriate resolution, entered into an agreement with the Toll Bridge Authority to contribute money to guarantee payment of principal and interest on the bonds, and that this money "shall be derived from the share of moneys allocated to King County Road district No. 3 within the King County Road Fund."

Also on November 9, 1959, the Toll Bridge Authority adopted Resolution No. 341:

"A resolution of the Washington Toll Bridge Authority Providing for the Issuance and Sale of 'Washington Toll Bridge Authority, Second Lake Washington Toll Bridge Revenue Bonds,' in the Principal Sum of $30,000,000.00, to Provide the Funds Necessary to Pay the Cost of Constructing an Additional Toll Bridge, Including Approaches Adequate to Carry a Free Flow of Traffic Thereto, Across Lake Washington at a Site in the Vicinity of Union Bay and Ever-

green Point, Including the Repayment to the 'Motor Vehicle Fund' of Funds Heretofore Appropriated Therefrom as a Loan to the Washington Toll Bridge Authority, and Including the Amount to be Deposited in the 'Washington Toll Bridge Authority Revolving Fund,' as Required by Law; Fixing the Date, Form, Terms, Covenants, Maximum Interest Rate, and Maturity of Said Bonds; Creating Special Funds and Accounts for the Payment of the Principal of and Interest on Said Bonds and for the Application of the Revenues from the Said Bridge; Providing Certain Other Protective Features Safeguarding the Payment of Said Bonds; Providing for the Rights of the Holders of Said Bonds and the Enforcement Thereof; and Repealing Resolution No. 338 and All Other Resolutions and Orders in Conflict Herewith."

Also on this same day, the State Auditor informed the Toll Bridge Authority that he would refuse to sign these bonds because he questioned the legality of their issuance and delivery. Thereupon, the Toll Bridge Authority applied to this court for a writ of mandamus to compel the State Auditor to sign the bonds and authorize the use of his facsimile signature upon the coupons. In this action, we granted leave to intervene to R. G. Clark and D. G. Smith, residents and taxpayers in Road District No. 3 of King county.

On December 23, 1959, the Toll Bridge Authority ratified an additional sixty-day extension obtained by its executive secretary. Another sixty-day extension, obtained by the executive secretary, was similarly ratified on March 8, 1959.

This court issued a writ of mandamus against the State Auditor on April 15, 1960, in *State ex rel. Washington Toll Bridge Authority v. Yelle*, 56 Wn. (2d) 86, 351 P. (2d) 493 (1960). That same day, upon being advised of our decision, the Toll Bridge Authority obtained another sixty-day extension of time for the award of the contract. Since it did not appear that the bond sale could be completed within this additional time, yet another sixty-day extension was obtained by the executive secretary and ratified by the Toll Bridge Authority. The termination date of this last extension was to be August 17, 1960.

. A call for bids for the purchase of the State of Washington, Toll Bridge Authority Second Lake Washington Toll Bridge Revenue Bonds was made and on July 20, 1960, the return date, one bid was received. This bid, submitted by a group of underwriters headed by Blyth & Company, was accepted by the Toll Bridge Authority on that same day. Since Blyth & Company wanted the construction contract in question to be executed at the time it paid for the bonds, payment was not then made.

On the morning of August 9, 1960, the written contract was executed with Guy F. Atkinson Company and payment was made by Blyth & Company for the bonds. Also on the morning of August 9, 1960, the plaintiff acquired one of these bonds after having been informed by his counsel of the many bid extensions.

After having invested the sum of $1,000 to become the owner of this bond, the plaintiff decided to bring this action to have the contract to construct the floating portion of the bridge, which, it was intended, would generate the return of his investment, declared void. In furtherance thereof, a detailed complaint was drafted and filed by 1:24 p.m. on August 9, 1960. The substance of the plaintiff's complaint is that, for this contract to be valid under the appropriate statutes, it would have been necessary for the contract to have been awarded either on the day the bids were opened or within a reasonable time thereafter, neither of which was done here; that the period of time for awarding the contract, as fixed by the call for bids and the extension obtained by the Director of Highways, expired before this contract was awarded, and the extensions obtained by the Toll Bridge Authority, being without statutory authority, were of no effect; and that the failure to comply with statutory procedure amounted to a frustration of the competitive bidding process which may increase the cost of the construction of the bridge, thereby affecting the security of his bond.

After a trial on the merits, the trial court entered findings of fact and conclusions of law, and a judgment in favor of the defendants, from which the plaintiff appeals.

 The respondents challenge the appellant's standing to bring this action. The appellant contends he has standing to bring this action as a bondholder under RCW 47.56.210, which provides:

"The holder of a bond may by mandamus or other appropriate proceeding require the performance of any duty imposed upon any state department, official, or employee, or imposed upon the authority or its officers, agents, and employees in connection with the *construction*, maintenance, operation, and insurance of a bridge, and in connection with the collection, deposit, investment, application, and disbursement of all tolls and other revenue derived from the operation and use of a bridge and in connection with the deposit, investment, and disbursement of the proceeds received from the sale of bonds. The enumeration of such rights and remedies shall not exclude the exercise or prosecution of any other rights or remedies by the holders of the bonds." (Italics ours.)

It is clear from this statute that the appellant does have a right to bring an action as a bondholder, unless he has put that right beyond his power to enforce, either by contract or otherwise. The respondents contend that the appellant promised not to enforce this right, in a "no-action" clause found in § 28, Resolution No. 341, of the Washington Toll Bridge Authority, unless certain conditions stated therein were first satisfied. The terms of this resolution were incorporated by reference in the bond purchased by the appellant. Section 28 of this resolution provides as follows:

"Upon the happening of any event of default specified in Section 27, then and in every such case, the Trustee may proceed, and the Trustee, upon the written request of the holders of 20% in principal amount of the Bonds then outstanding, shall proceed to protect and enforce the rights of the Trustee and the bondholders by a suit, action or special proceeding in equity or at law, or by a proceeding in the office of any state or federal board or officer having jurisdiction either for the specific performance of any covenant or agreement or execution of any power, or for the enforcement of any proper legal or equitable remedy as shall be deemed most effectual to protect and enforce the rights aforesaid.

"The Trustee shall be under no obligation to institute any suit, or take any proceedings under this Resolution, or to enter any appearance in any suit in which it may be made defendant, or take any steps in the enforcement of its, or any, rights and powers hereunder, nor be deemed to have failed to take any such action, unless and until it shall have been indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and other disbursements and including its own reasonable fees, and if any judgment, decree or recovery be obtained by the Trustee, payment of all sums due the Trustee as aforesaid shall be a first charge against the amount of any such recovery.

*"No holder of any of the Bonds shall have any right to institute any suit, action or proceeding in equity or at law for any remedy afforded by this Resolution unless such holder shall have previously given to the Trustee written notice of an event of default as hereinbefore provided, nor unless also the holders of twenty per cent (20%) in the principal amount of the Bonds then outstanding shall have made written request of the Trustee and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its or their names, nor unless also there shall have been offered to the Trustee security and indemnity satisfactory to it against the costs, expenses and liabilities to be incurred therein or thereby, it being understood and intended that no one or more holders of Bonds shall have any right in any manner whatever by his or their action to enforce any right hereunder except in the manner provided."* (Italics ours.)

Section 27 of this resolution provides:

"Each of the following events is hereby declared an 'event of default,' that is, if:

" . . .

"(c) Default shall be made in the due and punctual observance or performance of any of the covenants, conditions and agreements on the part of the Authority contained in the Bonds or in this Resolution, *or in any applicable law*, and such default shall continue for a period of thirty days after written notice from the Trustee specifying such default and requiring the same to be remedied shall have been given to the Authority." (Italics ours.)

We are not persuaded by the respondents' contention. A promise not to enforce or exercise the right as a bondholder

provided by RCW 47.56.210 cannot be found with sufficient clarity in § 28 of resolution No. 341. Where the alleged promise is one limiting the right to bring an action, the requirement of clarity is strict. As the Ohio court said, in *Perry v. Darlington Fireproofing Co.*, 76 Ohio App. 101, 63 N. E. (2d) 222 (1945),

"It may be stated as a general rule, as is done in the note appearing in 108 A. L. R., 88, 90, that:

" 'Reasonable restrictions on the right of action of an individual holder of one or more of a series of corporate bonds or other obligations, either in respect of the obligation or the security or of both, have generally been held to be valid and enforceable.'

"Further on it is said, on page 94 thereof, that:

" 'The construction and application of express restrictions on the right of action of an individual holder of one or more of a series of corporate bonds or other obligations depend largely upon the exact language of the particular restrictive provisions. * * * It has generally been said that restrictions on the right of action of an individual bondholder are to be strictly construed,' for the apparent reason that they are restrictive of rights recognized at common law. They are effective only when clear and free from doubt, and are not to be extended by implication, unless such a conclusion is inescapable. . . ."

To the same effect, see also, *Japha v. Delaware Valley Utilities Co.*, 1 Terry (Del.) 599, 15 A. (2d) 432 (1940). The promise of the bondholders not to sue, goes no further than to forbear from enforcing a contractual right afforded by the bond. The instant case is not an action enforcing a covenant contained in the bond. To the contrary, this is an action enforcing a right arising out of the statute that is independent of any contractual right arising out of the contract between the Toll Bridge Authority and the bondholders. Without deciding whether the right of action provided bondholders by RCW 47.56.210 could be bargained away, we hold that it was not in this case, and the appellant has standing to institute this action as a bondholder under RCW 47.56.210.

The respondents argue, however, that the action instituted by the appellant in the instant case is not an

action provided for by RCW 47.56.210, *supra*, in that it affords to the bondholders only the right to compel performance of a duty, but does not afford the right to prevent an unlawful performance of such duty. We disagree. The crucial language in RCW 47.56.210, *supra*, is the following:

"The holder of a bond may by *mandamus* or *other appropriate proceeding* require the performance of any duty imposed upon any state department, official, or employee, or imposed upon the authority or its officers, agents, and employees in connection with the construction, . . ." (Italics ours.)

By this statute the legislature intended to provide holders of toll bridge bonds with a means of seeing that duties relating to the construction of a Toll Bridge and required by law to be performed by the above-named persons will be complied with in so far as it affects their interest as bondholders. Consistent with this intention, the language "other appropriate proceeding" clearly encompasses a proceeding enjoining officials from an unlawful performance, as well as one compelling the affirmative performance by officials of their duties. The respondents' argument, therefore, is not persuasive.

It being determined the appellant has standing as a bondholder to institute the present action, it is unnecessary to consider his standing as a taxpayer.

In his first assignment of error, the appellant contends that the evidence does not support the italicized portion of the trial court's finding of fact No. IV, which states:

"*The Washington Toll Bridge Authority, Second Lake Washington Toll Bridge Revenue Bonds could not have been sold without having a firm construction bid for the Floating Structure, Unit I,* and as an inducement to the prospective purchasers of said bonds, the Toll Bridge Authority represented in its Official Statement, distributed to the prospective purchasers, that the bid of Guy F. Atkinson Company in the amount of $10,969,596.95 would be accepted; and a contract with said Guy F. Atkinson Company was executed and delivered simultaneously with the delivery of the said bonds *without which the bond purchase would not have been consummated and the money paid therefor.*" (Italics ours.)

This contention is governed by the rule applicable to appellate review of findings of a trial court, that if substantial evidence exists in the record which, if believed, would support the findings, such findings will not be overturned on review. *Stringfellow v. Stringfellow*, 56 Wn. (2d) 957, 350 P. (2d) 1003 (1960) and cases cited. From our examination of the record, we are satisfied it discloses substantial evidence to support the trial court's findings of fact No. IV.

It is the appellant's contention that the statutory procedure for letting contracts for the construction of toll bridges was not followed, and therefore, the contract entered into with the Guy F. Atkinson Company was void.

Section 10, p. 662, of chapter 173, Laws of 1937 (codified as RCW 47.56.030) provides:

*"The director of highways shall have full charge of the construction of all toll bridges* that may be authorized by the Washington Toll Bridge Authority, the operation and maintenance thereof and the collection of tolls thereon. *The director of highways shall proceed with the construction of such toll bridge and the approaches thereto by contract in the manner of state highway construction immediately upon there being made available funds for such work* and shall prosecute such work to completion as rapidly as practicable." (Italics ours.)

Laws of 1955, chapter 147, § 1, p. 648 (codified as RCW 47.28.050 and later amended) provides:

"The Washington state highway commission shall publish a call for bids for the construction of the highway according to the maps, plans, and specifications, once a week for at least two consecutive weeks, next preceding the day set for receiving and opening the bids, in not less than one trade paper and one other paper, both of general circulation in the state. The call shall state the time, place, and date for receiving and opening the bids, give a brief description of the location and extent of the work, and contain such special provisions or specifications as the director deems necessary: . . ."

RCW 47.28.090 (Laws of 1955, chapter 83, § 1, p. 473) provides:

*"At the time and place named in the call for bids the Washington state highway commission shall publicly open*

*and read the final figure in each of the bid proposals properly filed* and read only the bid items on the three lowest bids, *and shall award the contract to the lowest responsible bidder unless the commission has, for good cause, continued the date of opening bids to a day certain, or rejected said bid: Provided,* That any bid may be rejected if the bidder has previously defaulted in the performance of and failed to complete a written public contract, or has been convicted of a crime arising from a previous public contract. . . ." (Italics ours.)

The appellant contends that under RCW 47.28.090 the State Highway Commission was required to let the contract to the lowest responsible bidder at the time and place the bids were opened; that the language is clear and unambiguous, and there is no room for statutory construction. We disagree.

The evidence in the record clearly shows that to require a contract to be awarded at the time and place of the opening of bids would not permit the time necessary for an examination of the accuracy of the lowest bid on the basis of the plans and specifications in the invitation for bid, and that such an examination is essential prior to awarding the contract. A denial of this examination would, therefore, be a denial of the State Highway Commission's ability to award the contract, thereby nullifying the very purpose of the statute and making it inoperative. It is a well-established rule of statutory construction that courts will construe language of a statute to make it purposeful and effective, rather than futile and meaningless. *Denning v. Quist,* 172 Wash. 83, 19 P. (2d) 656 (1933); *DeGrief v. Seattle,* 50 Wn. (2d) 1, 297 P. (2d) 940 (1956). See also, Frank, *Words and Music: Some Remarks on Statutory Interpretation,* 47 Colum. L. Rev. 1259 (1957). It is therefore implicit in the language of the statute that a reasonable time be allowed after the opening of the bids for awarding the contract to the lowest responsible bidder to make the statute operative. The appellant contends, however, that awarding the contract sixteen and one-half months after the bids were opened was not within a reasonable time. A reasonable time depends upon the circumstances of each particular case.

■ In the instant case, under RCW 47.56.030, *supra*, the authority for construction of the toll bridge facility was conditioned upon funds being made available. Funds were not available until the toll bridge bonds, for the financing of construction, were sold and payment was made. The record shows that bonds were sold with due diligence after the long history of litigation as to their legality was concluded. The contract was awarded simultaneously with payment from the sale of the bonds, at which time funds for construction were first available. The contract was awarded by the Director of Highways and the State Highway Commission at the earliest opportunity after the opening of the bids under the circumstances of the instant case. This was within a reasonable time.

■ The appellant contends the construction contract was void because the extension of time agreed to by the Guy F. Atkinson Company for the awarding of the contract was without statutory authority. This contention is without merit. The purported extension of time made by the State Highway Commission, the Director of Highways, or the Washington Toll Bridge Authority is immaterial. What is material is that the contractor kept its bid open to permit the award of the contract when funds were available for construction. Since the bid was open at the time it was accepted, it makes no difference who solicited the extension.

■ The appellant contends the bid was vitiated, as a matter of law, for the reason the contract was awarded for a different period than was originally contemplated for performance. We disagree. The period for performance was not for a specific period. The work was to be performed within a period of seven hundred working days after the contract was let.

The appellant cites *Metropolitan Paving Co. v. Girard Inv. Co.*, 194 Mo. App. 661, 189 S. W. 401, wherein the court held a delay of seven months in the awarding of a contract by the city effected an abandonment of the proceedings for letting a contract for specified work. The case is not apposite. There, the contract was for a 120-day period, and the work could be performed at less cost during certain

seasons of the year than in others. Under those conditions, the delay in awarding such a contract would be a controlling factor in determining what constituted a reasonable time for the awarding of the contract. In the instant case, no such situation as cost of construction during seasons of the year is involved. The contract over a seven-hundred-working-day period obviously would not affect the amount of the bid by reason of ability to perform the work during favorable or less favorable seasons.

Appellant argues that a decline in the cost of construction over a different period than was originally contemplated for performance would require an award of the contract at a date earlier than sixteen and one-half months after the bids are opened to avoid frustration of competitive bidding.

This argument goes directly to the issue of reasonable time for the awarding of a contract, which must turn on the facts of each case. In the instant case, the record clearly shows there was no decline in the cost of construction. To the contrary, cost of construction had materially increased during the sixteen-and-one-half-month period. There could, therefore, be no frustration of competitive bidding by reason of the delay in the awarding of the contract.

The appellant contends the project to be built will not be the same as that upon which the bids were submitted. The appellant supports this contention on evidence in the record that changes in construction plans to assure structural stability will probably be made at a cost of $150,000. The record shows the contract awarded was not modified. The manner in which change orders may be effected is not before us for determination.

In view of our disposition of appellant's contentions, we deem it unnecessary to discuss other arguments advanced by the appellant in this case.

The judgment of the trial court dismissing the appellant's action is affirmed.

Weaver, C. J., Mallery, Donworth, Finley, Rosellini, Ott, and Foster, JJ., concur.

Hill, J., concurs in the result.

January 30, 1961. Petition for rehearing denied.

