[No. 41432. En Banc. May 28, 1970.]

HARLEY H. HOPPE, *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.** 

*Reported in 469 P.2d 909.

*Flanders, Flanders & Trolson,* by *Roy F. Trolson,* for appellant.

*The Attorney General, Donald H. Brazier, Jr., Chief Deputy,* and *Robert J. Doran, Deputy,* for respondent.

HAMILTON, J.—The appellant, Harley H. Hoppe, a resident and taxpayer of the state, initiated this declaratory judgment action pursuant to RCW 7.24 seeking a determination that Laws of 1969, ch. 3, p. 12, violated Const. art. 28, § 1. The trial court continued a hearing on the matter to permit the appellant to make a demand upon the Attorney General to prosecute the action. The Attorney General refused and, thereafter, filed a motion for summary judgment on behalf of the State of Washington, as respondent. The trial court granted respondent's motion upon the grounds that Laws of 1969, ch. 3, p. 12, is not unconstitutional on its face and that there were no facts of which the court could take judicial notice which would establish the unconstitutionality of the act. This appeal followed.

We substantially agree with the trial court and affirm the order granting summary judgment.

Const. art. 28, § 1, provides, *inter alia:*

The compensation of any state officer shall not be increased or diminished during his term of office, . . .

Laws of 1969, ch. 3, p. 12, provides:

Section 1. In view of the decreased purchasing power of the dollar and the concomitant increase in the cost of living during the past several years, the members of the legislature declare that the twenty-five dollar per diem allowance provided during the past several sessions in lieu of subsistence and lodging is inadequate to cover necessary expenses incurred while attending sessions of the legislature. The legislature further finds and declares that forty dollars per day is a fair and adequate allowance to cover such reimbursement.

Sec. 2. Section 1, chapter 173, Laws of 1941 as last amended by section 6, chapter 127, Laws of 1965 ex.sess., and RCW 44.04.080 are each amended to read as follows:

Members of the legislature including the president of the senate shall be paid not to exceed ((twenty-five)) forty dollars per day in lieu of subsistence and lodging during and while attending any legislative session. ((The effective date of this section shall be January 1, 1967.))

Appellant, in his argument, concedes that the $25 per diem allowance in lieu of subsistence and lodging provided for in Laws of 1965, Ex. Ses., ch. 127, § 6, p. 2181,[1] is reasonable and valid. Concerning the amount in excess of $25, he states in his brief:

[T]hat $40.00 a day for per diem expenses of the state legislature, is on its face, a violation of Article 28, Sec. 1 of the constitution in that the amount in excess of $25.00 or $15.00 is an increase in compensation.

In approaching a disposition of appellant's contention it is to be observed at the outset that Laws of 1969, ch. 3, p. 12, is not free of ambiguity as to which of two methods of expense reimbursement the statute adopts, i.e., whether it (a) provides only for the reimbursement of those subsistence and lodging expenses actually incurred and vouchered for up to but not in excess of $40 per day;[2] or (b) grants a

---

[1]The $25 per diem allowance was first enacted by Laws of 1957, ch. 3, § 1, p. 9.

[2]In connection with alternative method (a) above, attention is directed to RCW 44.04.090, relating to reimbursement of expenses

flat lump sum per diem amount of $40 in lieu of subsistence and lodging, upon the premise that daily expenses for such purposes in such an amount will necessarily be incurred by legislators attending upon a legislative session.

Certainly, if the first of the two possible interpretations be applied, there can be little doubt as to the constitutionality of the statute, for our constitution presently contains no prohibition against reimbursement of reasonable and necessary subsistence and lodging expenses actually incurred and vouchered for by a legislator while away from his usual place of residence and in attendance upon a legislative session at the seat of government. *State ex rel. Todd v. Yelle*, 7 Wn.2d 443, 110 P.2d 162 (1941).

In this vein, it is pertinent at this point to note that Const. art. 2, § 23, originally fixing the compensation of members of the legislature at $5 per attendance day and 10 cents a mile traveled to and from the place of meeting, was repealed in 1948 by Const. art. 28, § 1 (amendment 20) which allowed the compensation of elective state officials, including legislators, to be fixed by the legislature, provided, however, that such compensation could not be increased or diminished during a term of office. Const. art. 28, § 1, in turn, in 1968, was modified by Const. art. 30, § 1 (amendment 54) which permitted an increase in compensation during a term of office for such state, county, and municipal officials who did not fix their own salaries. Thus, it may be seen that the only constitutional limitation remaining which restricts allowances for subsistence and lodging of a legislator attending upon a session of the legislature is the prohibition of Const. art. 28, § 1, against legislators increasing or diminishing their compensation during their respective terms of office. In this latter respect, we

---

incurred by members of the legislature for subsistence and lodging, which provides:

> The state auditor shall issue warrants for said reimbursement on vouchers supported by affidavits that the reimbursement is claimed for expenses of subsistence and lodging actually incurred without itemization and without receipts. Such warrants shall be immediately paid from any funds appropriated for the purpose.

held in *State ex rel. Todd v. Yelle, supra,* that the word "compensation" as utilized in Const. art. 28, § 1, does not embrace nor include appropriate reimbursement for expenses incurred for subsistence and lodging by legislators attending a legislative session away from their regular place of residence.

■ It follows, therefore, as we have observed, that reimbursement for reasonable subsistence and lodging expenses actually and necessarily incurred and vouchered for by a legislator in attendance upon a session would be constitutionally permissible. However, the same can not quite be said on behalf of a flat or lump sum per diem allowance, payable in lieu of subsistence and lodging expenses actually incurred. On the one hand, if the specified sum bears a rational, realistic and proportional relationship to the actual daily subsistence and lodging expenses necessarily incurred by legislators attending upon a legislative session, then there would appear to be no logical reason for holding either the amount or the method of reimbursement constitutionally impermissible. On the other hand, however, should the specified amount be so patently and palpably in excess of and disproportionate to the actual and necessary per diem subsistence and lodging expenses which legislators, with due respect to the trust imposed by their office, would rationally, reasonably, and honestly incur, then the reimbursement allowance would run afoul of Const. art. 28, § 1. Cf. *Eberle v. Nielson,* 78 Ida. 572, 306 P.2d 1083 (1957); *Loushay Appeal,* 169 Pa. Super. 543, 83 A.2d 408 (1951); *Manning v. Sims,* 308 Ky. 587, 213 S.W.2d 577, 5 A.L.R.2d 1154 (1948); *Peay v. Nolan,* 157 Tenn. 222, 7 S.W.2d 815, 60 A.L.R. 408 (1928); *Taxpayers' League of Carbon County v. McPherson,* 49 Wyo. 251, 54 P.2d 897, 106 A.L.R. 767 (1936); *Scroggie v. Scarborough,* 162 S.C. 218, 160 S.E. 596 (1931); *State ex rel. Payne v. Reeves,* 44 S.D. 568, 184 N.W. 993 (1921); *Christopherson v. Reeves,* 44 S.D. 634, 184 N.W. 1015 (1921).

In the instant case, both parties and the trial court proceeded upon the assumption that Laws of 1969, ch. 3, p. 12, provided for a flat or gross per diem allowance in lieu of

subsistence and lodging. Assuming without deciding that the approach adopted by the parties is a proper one, we proceed to a consideration of the validity of the specified allowance based upon that interpretation of the statute.

In traveling this avenue of approach we pause to observe that (a) our state constitution is not a grant, but a limitation upon the law-making power of the legislature, and unless some express or fairly implied limitation upon the legislature's power to enact can be found in the constitution that power is virtually unrestricted—*State ex rel. Todd v. Yelle, supra; Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968); (b) an enactment of the legislature carries with it a presumption of validity and should not be declared unconstitutional unless its repugnancy to the constitution clearly appears or is made to appear beyond reasonable doubt—*Markham Advertising Co. v. State, supra; Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964); and (c) where it does not otherwise appear in the body of the act, it will be presumed that the legislature has appropriately and affirmatively determined any special facts essential to the validity of a questioned enactment; however, where a legislative declaration of the basis and necessity for an enactment does appear in the enactment that declaration is to be deemed conclusive as to the circumstances asserted and must be given effect unless, aided only by facts of which a court can take judicial notice, it can be said that the legislative declaration on its face is obviously false—*Markham Advertising Co. v. State, supra; State ex rel. Hoppe v. Meyers,* 58 Wn.2d 320, 363 P.2d 121 (1961).

As we remarked in *Lenci v. Seattle, supra,* these enumerated principles are not merely rules of judicial convenience. Rather they draw and mark the line of demarcation between the function and authority of the legislative and judicial branches of our government.

Resuming then the approach followed by the parties and the trial court, and turning to Laws of 1969, ch. 3, p. 12, it is at once apparent that the legislature did declare the

circumstances and basis upon which the in lieu allowance of subsistence and lodging was increased. In essence, it predicated the increase upon (1) the decreased purchasing power of money; (2) the increased cost of living; (3) the inadequacy of the former allowance to cover current and necessary expenses of subsistence and lodging; and (4) the sufficiency of the increased allowance to meet such expenses. Thus, absent express or implied constitutional limitation precluding a fair and reasonable allowance for necessary living expenses incurred by a legislator attending upon a legislative session away from the locale of his established residence, and given the strong presumption of validity which attaches to the enactment as a whole, coupled to the aura of conclusiveness surrounding the legislative declaration of the facts and circumstances prompting the enactment, the question arises: Can it be said, beyond reasonable doubt, as appellant would have us say, that the legislatively declared circumstances, on their face or within the ken of judicial notice, are obviously false and the in lieu amount provided by the pertinent enactment so palpably exorbitant and excessive as to clearly render the enactment repugnant to Const. art. 28, § 1?

We think the question must be answered in the negative.

■ The burden of showing how and why the challenged enactment violates the cited constitutional limitation rests heavily upon appellant. *Lenci v. Seattle, supra.* With the exception of references to statutory provisions relating to travel and per diem allowances for other state officials and for members of the legislature attending interim committee meetings, and an allusion to the United States Internal Revenue Service's treatment of per diem allowances in connection with income tax considerations, appellant has referred us to no appropriate sources of information to draw upon or authoritative facts[3] of which we can properly take judicial notice.[4]

---

[3]Appellant cites only various newspaper articles and an undated room rate schedule for the Tyee Motor Inn of Olympia, Washington.

[4]Both parties point to the following rule governing matters of which

On the other hand, it is constitutionally so provided and a matter of common knowledge that legislators elected from the various legislative districts throughout the state are periodically called upon to attend, at the seat of government, regular and/or special sessions of the legislature which may last from 30 to as many as 120 or more consecutive days.[5] Because of committee assignments, meetings, and hearings as well as conferences with visiting constituents and their regular legislative deliberations, the hours of duty are long and irregular and the personal presence of the members is required at the seat of government throughout the session. Common sense tells us that, with few exceptions, members coming from varying parts of the state to attend a legislative session are required to leave—though still maintain—their permanent abodes and, for the duration of the session, take up temporary residence at the seat of government. The practicalities of everyday life teach that temporary board, lodging and living away from one's established home for a continuous and extended period of time entails substantially more expense than would otherwise be incurred on short periodic trips, including added costs for such ordinary items as rent, food, clothing, laundry, intra-family communication and visitation, trans-

---

courts may take judicial notice, set forth in *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 779, 380 P.2d 735 (1963):

Judicial notice, of which courts may take cognizance, is composed of facts capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and verifiable certainty. The court may

". . . resort to encyclopedias, authoritative works upon the subject, reports of committees, scientific bodies, and any source of information that is generally considered accurate and reliable . . ." *Ritholz v. Johnson,* 244 Wis. 494, 502, 12 N.W.(2d) 738, 741 (1944).

[5]Const. art. 2, § 12, and art. 3, § 7, respectively, provide for regular biennial sessions of the legislature, the duration of which shall be for 60 days, and for special sessions convened upon proclamation of the Governor as chief executive. Note should also be taken of the House and Senate Journals of 1967 and 1969 which indicate that the combined regular and extraordinary sessions of the Fortieth and Forty-first Legislatures remained in continuous session for 112 and 120 days, respectively.

portation, parking, and other miscellaneous and unanticipated essentials.

Against this background, judicial notice can be taken of the fact that the purchasing power of the dollar has diminished and consumer prices have risen substantially[6] since 1957, the year the legislature first fixed the in lieu of subsistence and lodging reimbursement to legislators at $25 per day. (Laws of 1957, ch. 3 § 1, p. 9.) A review of the United States Department of Labor, Bureau of Labor Statistics data, indicates that, based upon the 1957-59 dollar, the 1968 dollar had shrunk to 82.5 cents and the 1968 annual average consumer price index on all items had risen 21.2 cents.[7] The same sources indicate that during 1969 alone the average annual consumer price index rose another 6.7 cents and the cost of food away from home increased from its 1968 36.3-cent level over the 1957-59 prices by another 7.3 cents.[8]

These statistics are indicative of the inflationary trends occurring during the last decade and, when coupled with the added and variable expenses incident to living at and in a "home away from home" for a 30-, 60-, 90-, or 120-day interval, amply sustain the legislative findings of the decreased purchasing power of money, the increased living costs, and the need for an adjustment in subsistence and lodging allowances. It cannot, therefore, be decisively said that the legislative declaration, concerning the inadequacy of the former allowance for such expenses, is undoubtedly and obviously false, and/or that the amount of the per diem allowance fixed upon is so manifestly and unquestionably disproportionate to actual and necessary subsistence and lodging expenses, which legislators attending upon a legislative session away from their permanent residence would in good faith incur, as to render any identifiable portion thereof "compensation," rather than actual reimbursement.

---

[6] See *Kellerher v. Porter*, 29 Wn.2d 650, 189 P.2d 223 (1948); and *Gordon v. Gordon*, 44 Wn.2d 222, 266 P.2d 786 (1954).

[7] U.S. Bureau of Census, *Statistical Abstract of the United States* (90th ed. 1969), at 339 and 345.

[8] Monthly Labor Rev., Feb., 1970, at 105.

■ In summary and in conclusion, we are of the view that (1) there is no constitutional limitation against reimbursement of the expenses for subsistence and lodging necessarily incurred by legislators compelled to leave their usual place of residence to attend upon a regular or special session of the legislature; (2) the reimbursement of such necessary expenses by way of a flat or lump sum per diem allowance, as opposed to requiring the vouchering, auditing, and approval of only those expenses actually and individually incurred, is not per se unconstitutional; (3) the choice between the two methods of reimbursement is a legislative decision rather than a judicial one; and (4) Laws of 1969, ch. 3, p. 12, if construed as providing for a lump sum per diem reimbursement of expenses, is not on its face, nor within the scope of permissible judicial notice, so palpably excessive and exorbitant under current economic conditions as to compel a determination that any given portion thereof contravenes the limitation imposed by Const. art. 28, § 1.

Having reached this disposition of the issues before us, we do not deem it necessary to enter into a discussion of the alternative contentions advanced by respondent.

The summary judgment of dismissal is affirmed.

HUNTER, C. J., ROSELLINI, HALE, McGOVERN, and STAFFORD, JJ., concur.

STAFFORD, J. (concurring)—Neither party relied on RCW 44.04.090 at any stage of this litigation. However, the resolution of an apparent conflict between the majority and dissenting opinions demands that the statute be considered.

Justice Finley's dissent states in part:

> . . . I have no doubt that the legislature legally and constitutionally can provide funds and authorize reimbursement for living expenses *actually incurred and, in fact, paid by members while away from home attending sessions of the legislature at the state capital.*

(Italics his.)

The dissent appears to recognize the legislature's constitutional authority to provide for the payment of funds "in

lieu of subsistence and lodging" if the funds are paid as reimbursement for expenses actually incurred by legislators. RCW 44.04.090 supplies the link which establishes the element of actual "reimbursement" required by *State ex rel. Todd v. Yelle,* 7 Wn.2d 443, 110 P.2d 162 (1941).

Warrants for subsistence and lodging.

The state auditor shall issue warrants for said reimbursement on vouchers supported by affidavits that the reimbursement is claimed for expenses of subsistence and lodging actually incurred without itemization and without receipts. Such warrants shall be immediately paid from any funds appropriated for the purpose.

RCW 44.04.080[9] and RCW 44.04.090 relate to the same general subject. Where possible the court should attempt to harmonize statutes pertaining to the same subject and give effect to each. *State v. Bell,* 59 Wn.2d 338, 368 P.2d 177 (1962), and cases cited therein. The statutory sections should be considered as units of a total scheme so that the integrity of each is maintained. *Beach v. Board of Adjustment,* 73 Wn.2d 343, 438 P.2d 617 (1968). Furthermore, where a legislative enactment is subject to two interpretations, one rendering it constitutional and the other unconstitutional, the constitutionality of the enactment should be upheld. *George v. Day,* 69 Wn.2d 836, 420 P.2d 677 (1966); *Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964).

When the two statutory provisions are read together, it is clear that the State Auditor's authority to issue warrants in payment of the per diem allowance permitted by RCW 44.04.080 is dependent upon the receipt of vouchers from legislators establishing that the funds claimed are for "expenses of subsistence and lodging actually incurred". RCW 44.04.090. Funds so paid fall within the purview of actual "reimbursement" required by *State ex rel. Todd v. Yelle,* *supra,* thus rendering the challenged enactment constitutional. Any other interpretation would render RCW 44.04.090 futile and meaningless. The court does not indulge

---

[9]RCW 44.04.080 is the challenged statute. It is referred to in the majority and dissenting opinions as Laws of 1969, ch. 3, p. 12.

in such presumptions. *Davis v. State Toll Bridge Auth.*, 57 Wn.2d 428, 357 P.2d 710 (1960); *Kelleher v. Ephrata School Dist. 165*, 56 Wn.2d 866, 355 P.2d 989 (1960).

In short, joint consideration of RCW 44.04.080 and RCW 44.04.090 makes it apparent that RCW 44.04.080 does not authorize an increase in compensation during a legislator's term of office.

FINLEY, J. (dissenting)—With a preponderant majority of the court apparently for affirmance of the trial court, it may seem a waste of time and effort and rather futile to dissent, even briefly. However, my convictions conflict strongly with those expressed in the majority opinion. I am unable to sign it or to simply concur in the result reached. Consequently, I must indicate disagreement and dissent, stated briefly I trust, but as strongly as possible in the following several paragraphs:

First, article 28, section 1 of the state constitution provides, among other things: "The compensation of any state officer shall not be increased or diminished during his term of office, . . ."

Second, members of the legislature are state officers within the purview of the language of article 28, section 1 of the state constitution.

Third, in chapter 3, section 1 at page 12 of the Laws of 1969, the legislature stated a well known economic fact of life, that the purchasing power of the dollar has decreased and that the cost of living has increased. Thereupon, the legislature stated two resounding generalizations: namely, that a $25 per diem allowance in lieu of subsistence and lodging is inadequate to cover necessary expenses incurred by legislators while attending sessions, but that $40 per day is a fair and adequate allowance. The statement as to a $40 per day allowance is then followed by a somewhat strange reference to *reimbursement*. This reference to reimbursement is clearly inconsistent with the basic thesis of the statute—namely, an allowance of $40 per day in lieu of auditing and accounting in relation to reimbursement for expenses actually in fact incurred.

Fourth, a fair and reasonable reading of the opinion of this court in *State ex rel. Todd v. Yelle*, 7 Wn.2d 443, 110 P.2d 162 (1941), holds that reimbursement for living expenses incurred by legislators when away from home attending a legislative session at the seat of government in Olympia does not constitute an increase in compensation during a term of office within the prohibition of article 28, section 1 of the state constitution. Thus, reimbursement for living expenses actually incurred and paid by members of the legislature while attending a session of the legislature is the theme, the thesis, and the holding of the *Todd* case. This, in my judgment, simply stated, means that a member of the legislature who incurs and actually pays $5 or $50 per day for living expenses (food and lodging and other incidental personal maintenance expenses), or if his conscience permits or necessity requires incurring and paying out-of-pocket $100 or even more per day, the two houses of the legislature could appropriate funds and provide for reimbursement of any such living expenses reported as incurred and actually paid by members of the legislature. The *Todd* case does not mean, and article 28, section 1 does not permit, the legislature nor members of this court to indulge in generalities, to guess and speculate as to what constitutes a reasonable allowance or per diem in lieu of "reimbursement." In other words, I have no doubt that the legislature legally and constitutionally can provide funds and authorize reimbursement for living expenses *actually incurred and, in fact, paid by members while away from home attending sessions of the legislature at the state capital.* I would have no hesitation in judicially approving this kind of straightforward, definite and clearcut provision by the legislature for personal maintenance expenses as being within the constitutional authority of the state legislature. It is crystal clear to me that the key words are and should be "reimbursement for living expenses actually incurred and paid." Anything else paid to legislators from the public treasury is clearly income or additional salary or compensation. In my judgment, any such payment is not only subject to the federal income tax laws, but also is imper-

missible under the impact of the *Todd* case and under the provision of article 28, section 1 of the state constitution prohibiting an increase in the salary or compensation of legislators during a term of office.

There is no doubt in my mind that legislators, as well as many other individuals, have been seriously and adversely affected by the constantly rising cost of living. Several remedies or avenues of relief are available to legislators to resolve their problem of not being able to make ends meet in the performance of their official duties on the basis of existing salaries: (a) legislators' salaries can, and, I personally think, should be increased to a reasonably appropriate level considering the present and increasing demands upon legislators' time and the escalating personal living or maintenance expenses incurred in the performance of their official duties during legislative sessions in Olympia; (b) an amendment could be submitted to the people of this state to revise article 28, section 1 to permit an increase in the salary of legislators during their terms of office (a similar problem and long-standing inequity regarding other elected officials, including members of the judiciary, was recently resolved by a constitutional amendment submitted to and approved by the voters); (c) adequate provision can be made for the payment of public funds to reimburse legislators for expenses actually incurred and paid while attending sessions of the legislature.

No legal gymnastics or judicial juggling of the English language can change, in my judgment, this basic fact of life, logic, and economics: any payment of public funds to a legislator in addition to the salary regularly established by law, not in fact expended for personal maintenance expenses actually incurred is income and constitutes an increase in compensation within the prohibition of article 28, section 1 of the state constitution. I cannot, and certainly do not, fault other members of the court for saying otherwise. One of the difficulties, yet one of the great strengths, of a multi-judge appellate court is that inevitably there will be honest differences. However, regardless of whether I apply a so-called strict, literal, or liberal judicial reading and

178

interpretation of our constitution, I cannot reach a conclusion which differs from that which I have stated. As for me, the meaning of article 28, section 1 together with the import of the *Todd* case, *supra,* seem so very clear that the legal premises and legal logic applicable in this case are well nigh inexorable. Thus, as I see it, my role or function as a member of this court is preordained in dissent—expressed as strongly as possible. So be it.

HILL, J. Pro Tem., concurs with FINLEY, J.